835 A.2d 632

Prince Carmen JONES, Sr., et al.

v.

PRINCE GEORGE'S COUNTY, Maryland, et al.

No. 42, Sept. Term, 2002.

Court of Appeals of Maryland.

Nov. 13, 2003.

Terrell N. Roberts, III (Roberts & Wood, Riverdale; Patrick Malone of Stein, Mitchell & Mezinnes, Washington, DC), all on brief, for Appellants.

Michael S. Rosier (Law Offices of Michael S. Rosier and Associates, Oxon Hill), on brief; Rhonda L. Weaver, Associate County Atty. (Leonard L. Lucchi, County Atty, and John A. Bielec, Deputy County Atty., Upper Marlboro), on brief, for Appellees.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

ELDRIDGE, Judge.

The principal issue in this case concerns the proper party or parties to bring a wrongful death action, under Maryland Code (1974, 2002 Repl. Vol.), § 3–901 *et seq.* of the Courts and

Judicial Proceedings Article, where some of the alleged wrongful acts occurred in Maryland, where other alleged wrongful acts took place in Virginia, and where the death occurred in Virginia.[1] We shall hold that Maryland law determines the threshold matter of whether a particular party may bring the suit. We shall also hold that the Circuit Court erred in ruling that Virginia tort law applied to the alleged wrongful acts of all of the defendants. In addition, we shall conclude that the Circuit Court improperly dismissed the action on the ground of *forum non conveniens.*

## I.

Since the Circuit Court for Prince George's County granted a motion for summary judgment dismissing the plaintiffs' action as to all defendants, we shall set forth the facts of the case in a light most favorable to the plaintiffs. *Rite Aid v. Hagley,* 374 Md. 665, 684, 824 A.2d 107, 118 (2003) ("factual disputes, and the inferences reasonably to be drawn from the facts, are resolved in favor of the party opposing summary judgment and against the moving party"); *Messing v. Bank of America,* 373 Md. 672, 683–684, 821 A.2d 22, 28 (2003); *International Broth. of Teamsters v. Corroon Corp.,* 369 Md. 724, 728, 802 A.2d 1050, 1052 (2002); *Home For Incurables v. University of Maryland Medical System Corp.,* 369 Md. 67, 70, 797 A.2d 746, 747 (2002); *Lovelace v. Anderson,* 366 Md. 690, 695, 785 A.2d 726, 728–729 (2001) ("as the tort action against the defendants ... was decided by a grant of the defendants' motions for summary judgment, we must review the facts, and all inferences therefrom, in the light most favorable to the plaintiffs").

On September 1, 2000, Corporal Carlton B. Jones and Sergeant Alexandre Bailey, of the Prince George's County Police Department, driving separate vehicles, followed a vehicle driven by Prince Carmen Jones, Jr. from the District of

---

1. This case does not involve a survival action pursuant to § 6–401(a) of the Courts and Judicial Proceedings Article and Code (1974, 2001 Repl. Vol.), § 7–401(y) of the Estates and Trust Article.

Columbia into Prince George's County, Maryland, back through the District of Columbia and into Fairfax County, Virginia. Prince Carmen Jones, Jr. was a resident of Maryland and was driving to Virginia in order to visit his fiancee, Candace Jackson, who resided in Virginia. The police officers were each driving unmarked sports utility vehicles. When Prince Carmen Jones, Jr. pulled into a driveway in a street in Fairfax County, Virginia, Corporal Jones pulled up behind him and blocked his exit.[2] Corporal Jones exited his vehicle, exhibited his weapon, but allegedly failed to identify himself as a police officer. Prince Carmen Jones, Jr. attempted to flee the scene, and Corporal Jones fired sixteen shots at him, five of which hit Prince Carmen Jones, Jr. in the back, and one in the arm. Sergeant Bailey was not on the scene at this time. Prince Carmen Jones, Jr. died a short time later in Virginia.

Following the death of Prince Carmen Jones, Jr. his mother, Mabel S. Jones, was appointed, by the Register of Wills of Prince George's County, Maryland, to be the personal representative of Prince Carmen Jones, Jr.'s intestate estate.[3] At the time of his death, Prince Carmen Jones, Jr. was unmarried but engaged to be married to Candace Jackson, the mother of Nina Jones. Nina had been born on October 2, 1999, and Prince Carmen Jones, Jr. had openly acknowledged her as his daughter. Candace Jackson consented to Mabel being the personal representative on behalf of her daughter as a beneficiary of the estate of Prince Carmen Jones, Jr.

Prince Carmen Jones, Sr., the father of Prince Carmen Jones, Jr., as co-guardian of Nina Jones and in his individual

---

2. The plaintiffs' allegations in this respect are as follows:

"Prince Jones pulled his Jeep onto Beechwood Lane, the street where his fiancee, Candace Jackson, lived, and then turned onto Spring Terrace and into a driveway on that street. He apparently realized he was being followed and was trying to avoid leading his pursuer to his fiancee's house."

3. Subsequently, the Orphans' Court of Prince George's County appointed Prince Carmen Jones, Jr.'s father, Prince Carmen Jones, Sr. as co-personal representative. The record in this case indicates that the Orphans' Court's action in this regard was appealed to the Circuit Court for Prince George's County, and that the appeal is still pending.

capacity, and Candace Jackson, as guardian and next friend of Nina Jones, filed this wrongful death action in the Circuit Court for Prince George's County against Corporal Carlton Jones, Sergeant Alexandre Bailey, Prince George's County Chief of Police John S. Farrell, the Prince George's County Police Department, and Prince George's County, Maryland. Pursuant to Maryland Rule 15–1001(b), the action was also to the use of Mabel S. Jones, the mother of Prince Carmen Jones, Jr. In the complaint, the plaintiffs alleged that Corporal Carlton Jones used excess force and that

"Corporal Jones and Sergeant Bailey were grossly negligent and reckless in multiple ways that led to the death of Prince Jones. This misconduct included: (1) initiating and continuing the surveillance of Prince Jones without any basis to believe that he had committed or was about to commit any crime; (2) Corporal Jones's initiating an unnecessary and unlawful encounter with Prince Jones in the driveway on Spring Terrace in Fairfax, Virginia, by blocking Mr. Jones's vehicle with his own vehicle; (3) Corporal Jones's unlawful display of a handgun coupled with his failure to properly identify himself as a police officer; (4) Corporal Jones's mishandling of his encounter on Spring Terrace with Prince Jones that foreseeably escalated into a violent altercation; (5) Sergeant Bailey's failure to properly supervise Corporal Jones during this episode."

The complaint further asserted that Sergeant Bailey, the Prince George's County Chief of Police, the Prince George's County Police Department, and Prince George's County were vicariously liable for Corporal Jones's actions under the doctrine of respondeat superior. In addition, the complaint alleged that these same defendants were directly liable for their own tortious conduct. The plaintiffs contended that Corporal Jones's use of excessive force was "part of a pattern of excessive force by Prince George's police officers" and was "the result of a municipal policy and custom, implemented and controlled by Chief Farrell, of providing inadequate training and supervision for its officers in how to handle street encounters with civilians without unnecessary use of lethal force." It

was alleged that the Prince George's County Police Department "had a policy of tolerating and even encouraging these episodes of excessive force by failing to investigate and take appropriate disciplinary and restraining actions against the officers involved," and that the Police Chief "knew . . . that county police officers were repeatedly injuring civilians by use of excessive force." The plaintiffs claimed that Prince George's County's failure and/or refusal to provide proper supervision and training to its police officers "led directly to the death of Prince Jones, Jr." The complaint also alleged violations of Prince Carmen Jones, Jr.'s constitutional rights under Articles 24 and 26 of the Maryland Declaration of Rights.

The complaint asserted that some of "the wrongful conduct causing the death of Prince Jones occurred in Virginia" and was, therefore, governed by "Virginia substantive law." The complaint also asserted that, "because some of the negligent and wrongful conduct described herein occurred in Maryland," to some "extent . . . this action is . . . governed by Maryland substantive law." The plaintiffs sought both compensatory and punitive damages.

Mabel S. Jones, whom the Prince George's County Register of Wills had appointed to be personal representative of the estate of Prince Carmen Jones, Jr., filed a motion to intervene which the Circuit Court granted. Mabel Jones then filed a motion for summary judgment seeking dismissal of the plaintiffs' entire action on the ground that Virginia law controlled and that, under Virginia law, she, as the personal representative of Prince Carmen Jones, Jr.'s estate, was the only person authorized to bring a wrongful death action.[4] In her motion for summary judgment, Mabel Jones stated that

---

4. Actually, under Virginia law, a wrongful death action may be brought in Virginia only by one who has qualified under Virginia law as the personal representative. One who has qualified as a personal representative in another state, but has not qualified under Virginia law, "does not have standing to maintain" a wrongful death action under the Virginia Wrongful Death Act. *Fowler v. Winchester Medical Center, Inc.*, 266 Va. 131, 133, 580 S.E.2d 816, 817 (2003).

she had brought a wrongful death action, based on the death of Prince Carmen Jones, Jr., in the United States District Court for the District of Columbia.[5] The defendants Carlton Jones, Alexandre Bailey, Police Chief John Farrell, the Prince George's County Police Department, and Prince George's County also sought a dismissal of the plaintiffs' action on the ground of *forum non conveniens.*

As earlier indicated, the Circuit Court for Prince George's County granted Mabel Jones's motion for summary judgment and dismissed the entire action. The Circuit Court held that, "[u]nder Maryland law, in a wrongful death action where the wrongful death occurs in another State, 'a Maryland Court shall apply the substantive law of that jurisdiction.'" The court went on to hold that the proper party to bring a wrongful death action was a matter of substantive law which was controlled by the law of Virginia, and that, under Virginia law, only Mabel Jones was entitled to bring the action.[6] The Circuit Court also agreed with the defendants' "position that Virginia is a more convenient forum" because "[t]he shooting occurred in Virginia. Plaintiff Nina Jones and her mother reside in Virginia. Virginia law will govern this case, and witnesses and key evidence are located in Virginia."[7]

The plaintiffs appealed to the Court of Special Appeals, challenging all three rulings by the Circuit Court.[8] Prior to

---

**5.** In response to Mabel Jones's motion, the plaintiffs asserted that the defendants had moved to dismiss the District of Columbia action for lack of jurisdiction and for improper venue. As far as the record in this case shows, that motion is still pending.

**6.** *See,* however, n. 4, *supra.*

**7.** The court did not explain what evidence and "witnesses" were located in Virginia. The record in the present case does not indicate that there were any witnesses to the shooting other than Corporal Jones whose address is in Maryland.

**8.** The plaintiffs' brief presented the following three arguments:

"I. The Lower Court's Decision to Apply Virginia Law and Thereby Rule that the Decedent's Family Members Lacked Standing to Bring Wrongful Death Claims Under Maryland Law was Error.

oral argument in that intermediate appellate court, we issued a writ of certiorari. *Jones v. Prince George's County,* 369 Md. 570, 801 A.2d 1031 (2002). We shall address all three issues raised by the plaintiffs, although not in the same order.

## II.

In a Maryland wrongful death action, based upon a wrongful act occurring outside of Maryland, the Maryland wrongful death statute itself specifies which jurisdiction's law shall govern. Section 3–903 of the Courts and Judicial Proceedings Article of the Code states as follows:

" § **3–903. When wrongful act occurs outside of Maryland.**

"(a) *Application of substantive law of another state.*—If the wrongful act occurred in another state, the District of Columbia, or a territory of the United States, a Maryland court shall apply the substantive law of that jurisdiction.

"(b) *Maryland court to apply own rules of pleading and procedure.*—Notwithstanding the fact that the wrongful act occurred in another jurisdiction, a Maryland court in which the action is pending shall apply its own rules of pleading and procedure."

■ Consequently, the Circuit Court erred in holding that, "where the wrongful *death* occurs in another State, 'a Maryland Court shall apply the substantive law of that jurisdiction.'" (Emphasis added). Under the plain language of the statute, it is the place of the wrongful *act,* and not the place of the wrongful *death,* which determines the substantive tort law

---

Under the Maryland's Wrongful Death Statute, Standing to Bring Wrongful Death Claims is a Procedural Issue and is to be Decided by Maryland Law.

"II. The Lower Court Erroneously Construed Maryland's Wrongful Death Statute to Apply the Law of the State Where Death Occurred. Instead, According to the Statute, the Law of the State in Which the Wrongful 'Act' or 'Neglect' Occurred is to be Applied.

"III. The Lower Court Erred in Dismissing Claims on the Basis of Forum Non Conveniens: Substantial Justice Does Not Require that the Case Be Tried in Another Forum."

to be applied in a particular wrongful death action. *See Powell v. Erb*, 349 Md. 791, 801, 709 A.2d 1294, 1300 (1998).

This choice of law principle was illustrated by a case in the United States Court of Appeals for the Fourth Circuit, *Farwell v. Chong H. Un, M.D., Linwood W. Briggs, M.D.*, 902 F.2d 282 (4th Cir.1990). In *Farwell*, a resident of Maryland, suffering from a mental disorder or disease, was treated in Maryland by one of the defendant physicians, was treated in Delaware by the other defendant physician, and thereafter committed suicide in Pennsylvania. The decedent's widow brought a wrongful death action, based on diversity of citizenship, in the United States District Court for the District of Maryland, against both physicians, alleging that their negligent treatment of the decedent in Maryland and in Delaware proximately caused his death in Pennsylvania. In rejecting an argument that Pennsylvania substantive tort law should apply, the United States Court of Appeals emphasized that "Maryland's wrongful death statute speaks directly to the choice of law rule to be applied in such cases," 902 F.2d at 287. The court held that, as to the claim against Dr. Un, the statute directly required "application of the law of Delaware where occurred the 'wrongful act' charged to him." *Ibid.* The Court continued (*ibid.*):

> "[The statute] does not speak directly to the claim against Dr. Briggs, for the 'wrongful act' charged to him occurred in Maryland and not 'in another state.' But by the strongest implication it points to Maryland as the proper source of law for deciding the Briggs claim. This is because the Maryland statute specifically identifies the locus of the 'wrongful act' rather than the locus of death as the critical choice of law determinant in wrongful death actions with multi-state connections. In this respect, this statute makes specific for wrongful death cases the 'place-of-wrong's-standard of care' exception to the classic *lex loci* rule, thereby displacing in this context the 'last-act-to-complete-the-tort' aspect of that rule."

*See also Sacra v. Sacra*, 48 Md.App. 163, 426 A.2d 7, *cert. denied*, 290 Md. 720 (1981) (Wrongful death action based on an

automobile collision in Delaware near the Maryland border, with the vehicle carrying the decedent being propelled into Maryland where it struck a Maryland utility pole, thereby causing the death in Maryland, and the court applied the substantive tort law of Delaware); *White v. R.J. Reynolds Tobacco Company,* 109 F.Supp.2d 424, 427 (D.Md.2000) (While the decedent died in Pennsylvania, and while Pennsylvania law would have been applied under the normal *lex loci* rule, in light of the Maryland wrongful death statute "this Court concludes that Maryland law applies because most of the wrongful acts charged to defendants occurred in Maryland"). *Cf. Philip Morris v. Angeletti,* 358 Md. 689, 745, 752 A.2d 200, 231 (2000) (The case did not involve a statute specifying the choice of law, and Judge Raker for the Court pointed out that, under Maryland common law choice of law principles, "when the events giving rise to a suit occur in a number of states . . . [, a]s a general rule, the place of the tort is considered to be the place of injury").

■ Accordingly, in a Maryland wrongful death action, where a particular defendant's alleged wrongful act or acts all occurred in Maryland, the substantive tort law of Maryland applies and not the law of another state where the death occurred. In the case at bar, therefore, the claims directly against the Chief of Police, the Police Department, Prince George's County, Maryland, and possibly Sergeant Bailey, based on alleged tortious "municipal policy and custom," negligent training, and negligent supervision, all of which occurred in Maryland, are governed by substantive Maryland tort law.[9]

■ On the other hand, the claim against Corporal Carlton Jones was based on alleged wrongful acts which, at least for the most part, occurred in Virginia. As the plaintiffs have

---

9. As to Sergeant Bailey, the record indicates that he was initially following Prince Carmen Jones, Jr., in a separate vehicle, but presumably along with Corporal Carlton Jones. The record further indicates that he was not on the scene when the shooting occurred. At what point Sergeant Bailey and Corporal Jones parted company is not disclosed by the record. Furthermore, it is not clear where Sergeant Bailey's alleged negligent supervision of Corporal Jones occurred.

consistently conceded, the wrongful death action against Corporal Jones should be governed by Virginia substantive tort law. *White v. R.J. Reynolds Tobacco Company, supra,* 109 F.Supp.2d at 427. Furthermore, the wrongful death claims against the other defendants, to the extent that the plaintiffs seek to hold them vicariously liable, under the doctrine of respondeat superior, for Corporal Jones's alleged tortious acts, should be governed by the substantive law of Virginia.

### III.

While the Maryland wrongful death statute mandates the general choice of law principles and specifies who are the beneficiaries of the action,[10] the present statute is silent with

---

10. Section 3–904 of the Courts and Judicial Proceedings Article provides in part as follows:

" **§ 3–904. Action for wrongful death.**

"(a) *Primary beneficiaries.*—(1) Except as provided in paragraphs (2) and (3) of this subsection, an action under this subtitle shall be for the benefit of the wife, husband, parent, and child of the deceased person.

(2) A parent may not be a beneficiary in a wrongful death action for the death of a child of the parent if:

(i) 1. The parent is convicted under §§ 3–303 through 3–308, § 3–323, § 3–601, or § 3–602 of the Criminal Law Article; or

2. The parent committed an act prohibited under §§ 3–303 through 3–308, § 3–323, § 3–601, or § 3–602 of the Criminal Law Article;

(ii) The other parent of the child is the victim of the crime or act described under item (i) of this paragraph; and

(iii) The other parent of the child is a child of the parent.

(3) (i) An action under this subtitle for the wrongful death of a child caused by the parent of the child allowed under the provisions of § 5–806 of this article may not be for the benefit of that parent of the deceased child.

(ii) An action under this subtitle for the wrongful death of a parent caused by a child of the parent allowed under the provisions of § 5–806 of this article may not be for the benefit of that child of the deceased parent.

"(b) *Secondary beneficiaries.*—If there are no persons who qualify under subsection (a), an action shall be for the benefit of any person related to the deceased person by blood or marriage who was substantially dependent upon the deceased.

"(c) *Damages to be divided among beneficiaries.*—(1) In an action under this subtitle, damages may be awarded to the beneficiaries proportioned to the injury resulting from the wrongful death.

regard to the person or persons who have standing to bring the action. Nevertheless, both the history of the statute and the general Maryland choice of law principles concerning the right to bring an action disclose that, for the purposes of the wrongful death statute, this is a procedural issue governed by the law of the forum and not a substantive issue governed by the law of another state where the wrongful act may have occurred. Consequently, the Circuit Court erred in dismissing the action on the ground that the plaintiffs lacked standing.

## A.

The Maryland wrongful death statute was enacted by Ch. 299 of the Acts of 1852, and it was based on the Lord Campbell's Act enacted by the British Parliament in 1846. The original Maryland statute did not deal with the applicable law if the wrongful acts or death occurred outside of Maryland. The statute did, however, expressly provide that the action "shall be brought by and in the name of the State of Maryland, for the use of the person entitled to damages...." Ch. 299 of the Acts of 1852, § 2.

In *Ash, Administratrix v. Baltimore and Ohio Railroad Company*, 72 Md. 144, 19 A. 643 (1890), the decedent, a citizen of Maryland, died in West Virginia "by means of the negligent and improper structure of one of the bridges on the road of the defendant, in the State of West Virginia." 72 Md. at 145, 19 A. at 644. The decedent's administratrix, appointed in Maryland, brought a wrongful death action against the Railroad Company in the Circuit Court for Cecil County. Under the West Virginia wrongful death statute, the personal representative was the proper person to bring the action. This Court, in an opinion by Chief Judge Alvey, held that the action could not be maintained either under the Maryland wrongful death statute or under the West Virginia wrongful death

---

(2) Subject to § 11–108(d)(2) of this article, the amount recovered shall be divided among the beneficiaries in shares directed by the verdict."

statute. The Court took the position that it could not (72 Md. at 147, 19 A. at 644)

"attempt to give extra-territorial force to our statute, and to make it apply to acts and transactions occurring in other States. And if our statute cannot be so extended and applied, there can be no reason why statutes of other States, not similar in provisions to our own, though belonging to the same general class of legislation, should be allowed extra-territorial force and operation, by the courts of this State."

The Court, after discussing differences between the Maryland and West Virginia statutes, then drew a distinction between common law tort actions and statutory tort actions (72 Md. at 148–149, 19 A. at 645):

"In Rorer on Inter–State Law, 144, 145, upon review of the authorities, the author states his conclusions to be, that in all purely personal actions of a transitory nature for torts at common law a citizen of a State may sue a citizen of another State in the courts of such other State, or of any State wherein he may reside, or may be found and served with process, without regard to the place or State in which the injury may have been inflicted. But that where certain acts are made wrongs by statute, which were not such theretofore, or where remedies additional to those which existed at common law are provided by statute, advantage can be taken of these new and additional remedies only within the territory or locality in which the statute has force. These constitute new rights, so to speak, and depend for their enforcement always upon the statutes by which they are created. And such statutes will be enforced only by the courts of the State wherein they are enacted."

This Court adhered to the holding in *Ash* for the next 46 years. *See, e.g., Dronenburg v. Harris,* 108 Md. 597, 608–612, 71 A. 81, 83–85 (1908); *London Guarantee & Accident Company v. Balgowan Steamship Company,* 161 Md. 145, 147–150, 155 A. 334, 335–336 (1931) (refusing to depart from the *Ash* holding despite its "inconsisten[cy] with the present trend of the law"); *Davis v. Ruzicka,* 170 Md. 112, 114, 183 A. 569, 570,

*cert. denied,* 298 U.S. 671, 56 S.Ct. 943, 80 L.Ed. 1394 (1936) ("[T]he courts of this state may not be employed to enforce generally legislation of this character"). *See also Olewiler v. Fullerton Supply Company,* 162 F.Supp. 563 (D.Md.1958), and *Kaufmann v. Service Trucking Co., Inc.,* 139 F.Supp. 1 (D.Md. 1956), for discussions concerning the history of this issue.

The 1936 decision in *Davis v. Ruzicka, supra,* 170 Md. 112, 183 A. 569, apparently prompted legislative action. By Ch. 495 of the Acts of 1937, the General Assembly added a new section to the wrongful death statute which provided as follows (Code (1935), Article 67, § 1A):

> "1A. In any action instituted in the Courts of this State where it shall appear that the death of a person has been caused by the wrongful act, neglect or default of another person, firm or corporation, and such wrongful act, neglect, or default shall have occurred outside of the State of Maryland, whether in another state, the District of Columbia or territory of the United States, the Courts of this State shall apply the law of such other state, District of Columbia or territory of the United States, to the facts of the particular case, as though such foreign law were the law of this State, provided, however, that the rules of pleading and procedure effective in the Court of this State in which the action is pending govern and be so applied as to give effect to the rights and obligations created by and existing under the laws of the foreign jurisdiction in which the wrongful act, neglect or default occurred; provided, however, that nothing in this section shall apply to causes of action arising prior to June 1, 1937."

This provision, later re-numbered as § 2, is essentially the same as the current § 3–903 of the Courts and Judicial Proceedings Article.

In 1947, the General Assembly for the first time addressed the question of the proper party to bring the wrongful death action where the wrongful act occurred outside of Maryland. Ch. 740 of the Acts of 1947 added new § 2A to the wrongful

death statute (then Article 67 of the Code) which provided as follows:

"2A. In all actions instituted in the courts of this State under Section 2 of this Article[, authorizing action where 'the wrongful act ... shall have occurred' outside of the State of Maryland], the proper person to bring the action shall be determined by applying the following rules:

"(a) Any person who is entitled to bring suit under the laws of the jurisdiction wherein the wrongful death occurred may bring suit in Maryland, upon proof of his qualifications and authority.

"(b) If the laws of the State wherein the wrongful death occurred provide for suit to be brought in the name of the State, District or Territory, as the case may be, then suit may be brought in Maryland in the name of this State on behalf of the beneficiaries protected under the foreign statute.

"(c) The provisions of this section shall not in any way be construed to apply to actions in which service of process can be obtained in the jurisdiction where the cause of action arose or where the plaintiff resides."

This provision was subsequently re-numbered as § 3. *See* Code (1951), Article 67, § 3.

As of May 31, 1962, § 2 of the wrongful death statute authorized an action where a wrongful act outside of Maryland caused a death and the same section specified what law should be applied. Section 3 set forth the "rules" as to the persons entitled to bring an action pursuant to § 2. Section 4, *inter alia,* provided, when the wrongful act occurred in Maryland, that the action should be brought in the name of the State of Maryland. *See* Code (1957, 1961 Cum. Supp. Part 2), Article 67, §§ 2, 3, and 4.

The most significant legislative change, with respect to the issue now before this Court, occurred in 1962. Ch. 36 of the Acts of 1962, effective June 1, 1962, was a comprehensive enactment which, according to its title, "relat[ed] generally to the removal of certain *procedural matter* from the statutory

law of the State of Maryland" so that the procedural matter would be covered by "the Maryland Rules of Procedure." *Laws of Maryland 1962* at 91, 99 (emphasis added). Section 1 of Ch. 36 specifically repealed Article 67, § 3. Section 43 of Ch. 36 repealed and re-enacted, with amendments, Article 67, § 4, to delete the provision that the wrongful death action "shall be brought by and in the name of the State of Maryland for the use of the person or persons entitled to damages." *Laws of Maryland 1962, supra,* at 101, 156.

Ch. 36 of the Acts of 1962, therefore, represented an unequivocal legislative determination that standing to bring a wrongful death action was a procedural matter. The repeal of Article 67, § 3, which had set forth the standing rules for an action under Article 67, § 2, involving an out-of-state wrongful act, demonstrated that standing was viewed as a rule of "procedure" for purposes of § 2's choice of law provision. The Legislature did not repeal article 67, § 3, because it believed that the law of the state where the wrongful act occurred should govern standing. Instead, the Legislature repealed § 3 because it viewed standing as a procedural matter to be governed by the Maryland Rules of Procedure. No subsequent enactment by the General Assembly has suggested any different legislative intent concerning this issue.

The Maryland Rules of Procedure, prior to January 1, 1997, provided in Rules Q40 and Q41 as follows:

**"Rule Q40. Application of Rule.**

"The Maryland Rules shall apply to all actions for wrongful death brought under Code, §§ 3–901 through 3–904 of the Courts Article and under Article 101, Section 58, whether the cause of action arose in this State or elsewhere."

**"Rule Q41. Plaintiffs.**

"a. *Cause of Action in This State.*

"Where such cause of action arose in this State all persons who are or may be entitled to damages by reason thereof shall be named as plaintiffs whether or not they joined in bringing the action; however, the names of those

who did not join in bringing the action shall be preceded by the words: 'to the use of . . . . . . . . .' "

"b. *Cause of Action in Foreign Jurisdiction.*

"Where such cause of action arose in a foreign jurisdiction, any person who is entitled to bring suit under the laws of such jurisdiction may bring suit in this State."

Even though the General Assembly had treated standing to bring a wrongful death action as a procedural matter, and even though § 3–903(b) of the Courts and Judicial Proceedings Article specified that Maryland rules of procedure would govern procedural matters when the wrongful act occurred in another jurisdiction, Maryland procedural law, namely Rule Q41b, incorporated by reference the standing law of the state where the wrongful act occurred. Accordingly, if the events in the case at bar had taken place before 1997, the plaintiffs would not have been able to bring the claims based upon Corporal Jones's wrongful acts in Virginia. This would not have been on the ground that standing was a substantive matter governed by foreign law. It would have been on the ground that Maryland procedural law provided for different plaintiffs for claims based on acts in Virginia.

In 1995, however, the Court of Appeals Standing Committee on Rules of Practice and Procedure (hereafter referred to as the "Rules Committee"), as part of a comprehensive re-codification of the Maryland Rules of Procedure concerning special proceedings, recommended to the Court of Appeals that Rule Q41a in substance be incorporated into new Rule 15–1001(b) which would provide as follows:

"(b) **Plaintiff.** If the wrongful act occurred in this State, all persons who are or may be entitled by law to damages by reason of the wrongful death shall be named as plaintiffs whether or not they join in the action. The words "to the use of" shall precede the name of any person named as a plaintiff who does not join in the action."

*See* the *132nd Report of the Standing Committee on Rules of Practice and Procedure,* 22 Maryland Register, Issue 24, P–110 (November 24, 1995). At the same time, the Rules

Committee recommended that Rule Q41b, concerning standing when the wrongful act occurred outside of this State, be repealed and not be incorporated in a new rule. A "Reporter's Note," which had been prepared for a subcommittee of the Rules Committee, stated: "Section b of Rule Q41 is not incorporated, because believed substantive in nature." The Reporter's Note did not explain why the issue of standing to bring the action was regarded as "procedural" if the wrongful act occurred in Maryland but "substantive" if the wrongful act occurred outside of Maryland. The minutes of the Rules Committee's meeting, at which the full Committee decided to approve of and forward these recommendations to the Court of Appeals, disclose that there was no discussion whatsoever of this issue.

The Court of Appeals, at a meeting in 1996, adopted these recommendations by the Rules Committee, with the new special proceeding rules to be effective January 1, 1997. The minutes of the Court of Appeals' meeting also reveal no discussion whatsoever of the standing issue in wrongful death cases. Despite the view expressed in the Reporter's Note, the General Assembly has not enacted a statute dealing with standing in wrongful death actions.

In sum, there are today no Maryland statutory provisions with respect to standing to bring a wrongful death action. This confirms the General Assembly's 1962 determination that standing to bring a wrongful death action is a procedural matter to be covered by rules and not an issue of substantive law. The Maryland Rules of Procedure adopted by the Court of Appeals, which are constitutionally limited to "rules and regulations concerning the practice and procedure in and the administration of the appellate courts and the other courts of this State,"[11] provide, in Rule 15–1001(b), that the statutory beneficiaries are the persons with standing to bring a wrongful death action "[i]f the wrongful act occurred in this State...." There is no longer a rule specifying standing to

---

11. Article IV, § 18(a), of the Constitution of Maryland.

bring a wrongful death action when the wrongful act occurs outside of Maryland.

As standing to bring a wrongful death action is a procedural matter within the meaning of § 3–903 of the Courts and Judicial Proceedings Article, it is governed by Maryland law. And because no current Maryland rule or statute covers standing to bring a wrongful death action based on a wrongful act outside of Maryland, the issue would logically seem to be governed by Maryland common law standing principles.

■ Under Maryland common law, standing to bring a judicial action generally depends on whether one is "aggrieved," which means whether a plaintiff has "an interest 'such that he [or she] is personally and specifically affected in a way different from . . . the public generally.' " *Sugarloaf v. Dept. of Environment*, 344 Md. 271, 288, 686 A.2d 605, 614 (1996), quoting *Medical Waste v. Maryland Waste*, 327 Md. 596, 611 n. 9, 612 A.2d 241, 248–249 n. 9 (1992) (some internal quotation marks omitted). Under this principle, the statutory beneficiaries of a wrongful death action are obviously the persons "aggrieved" and the persons whose interest is greater than that of anyone else. Therefore, under the Maryland wrongful death statute and Maryland standing principles, the plaintiffs were entitled to maintain this action.

### B.

■ Our holding that the right to bring a wrongful death action is a "rule [ ] of . . . procedure" within the meaning of § 3–903(b) of the Maryland wrongful death statute, and thus is governed by Maryland law, is consistent with general Maryland choice of law principles. For example, the issue of whether the statute of limitations bars a plaintiff's tort action in a Maryland court is governed by Maryland law and not the law of another state where the tort occurred. *Doughty v. Prettyman*, 219 Md. 83, 88, 148 A.2d 438, 440 (1959). As Professor Leflar has stated, "[a]ccess to forum courts is a matter for forum law to determine." Leflar, *American Conflicts Law*, § 127 at 349 (4th ed.1986).

In other contexts, even when the right to bring an action in a Maryland court might be deemed a substantive matter, we have on policy grounds applied Maryland law and not the law of another state where the cause of action arose. "With regard to the threshold matter of whether the court is open to a particular litigant, obviously the policy of the forum state is extremely important." *Hauch v. Connor,* 295 Md. 120, 133, 453 A.2d 1207, 1214 (1983). In *Hauch,* the plaintiffs were passengers in an automobile driven by the defendant. The plaintiffs and the defendant were residents of Maryland and co-employees in Maryland of the same corporation, but they were driving in Delaware in the course of their employment. A collision occurred in Delaware, allegedly because of the defendant's negligence, and the plaintiffs suffered personal injuries. The plaintiffs received workers compensation benefits under Maryland law and then brought a tort suit against the defendant driver in a Maryland court. Under Delaware law, co-employee tort suits are prohibited and workers' compensation benefits furnish an exclusive remedy, whereas under Maryland law, such co-employee tort actions are permitted. This Court initially held that, under the rule of *lex loci delicti,* "all questions concerning substantive tort law are to be governed by the law of Delaware, as it is the state where the collision occurred." *Hauch,* 295 Md. at 125, 453 A.2d at 1210. Nevertheless, because of the public policy of Maryland concerning entitlement to sue, coupled with the other Maryland contacts, "Maryland . . . law should determine the threshold question of the right to bring suit in Maryland courts." 295 Md. at 134, 453 A.2d at 1214. We re-affirmed the holding of *Hauch* in *Bishop v. Twiford,* 317 Md. 170, 176, 562 A.2d 1238, 1241 (1989), pointing out that "[t]he most important factor weighing in favor of applying Maryland law is the public policy of Maryland, the forum state, permitting" the plaintiffs to bring the action.

This Court in *Powell v. Erb, supra,* 349 Md. 791, 709 A.2d 1294, applied the *Hauch* and *Bishop* principles to a wrongful death action filed in Maryland, even though the alleged negligent acts and the death occurred in Pennsylvania. Although

Pennsylvania law would not allow the suit, we held that Maryland law controlled and that the plaintiffs were entitled to maintain the action. The Court, in an opinion by Chief Judge Bell, rejected the defendants' reliance upon the choice of "substantive law" provision in § 3–903 of the wrongful death statute, pointing out that the wrongful death statute does not "purport to deal with what *Hauch* denominated a threshold issue, 'whether the court is open to a particular litigant.'" *Powell v. Erb, supra,* 349 Md. at 801, 709 A.2d at 1299–1300, quoting *Hauch,* 295 Md. at 133, 453 A.2d at 1214.

Consequently, general Maryland choice of law principles confirm our interpretation of the wrongful death statute, that the right to bring the action is controlled by Maryland law.

## IV.

 The Circuit Court erred when it alternatively dismissed the case on the ground of *forum non conveniens.* In Maryland, the principle is codified in § 6–104 of the Courts and Judicial Proceedings Article which states, in pertinent part, as follows:

" **§ 6–104. Stay or dismissal of action which should be heard in another forum; consolidation of actions in District Court and circuit court.**

"(a) *In general.*—If a court finds that in the interest of substantial justice an action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions it considers just."

 The plaintiffs' choice of forum is not to be lightly disturbed. *See Leung v. Nunes,* 354 Md. 217, 224–225, 729 A.2d 956, 959–960 (1999), and cases there cited. *See also Urquhart v. Simmons,* 339 Md. 1, 660 A.2d 412 (1995); *Johnson v. Searle,* 314 Md. 521, 530, 552 A.2d 29, 33 (1989). A court "must weigh in the balance the convenience of witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Leung v. Nunes,* 354 Md.

at 224, 729 A.2d at 959 (internal quotations and citations omitted).

Maryland obviously has strong interests in this action. Denying the plaintiffs access to the courts of this State implicates important public policy considerations. In addition, all of the defendants and the intervenor are Maryland residents, as was the decedent. Perhaps the only witness, the defendant Carlton Jones, is a Maryland resident. The sequence of actions that ended in Virginia began in Maryland. Certain claims are entirely controlled by Maryland law.

 The intervenor-personal representative has not qualified in Virginia and thus, as her counsel acknowledged in oral argument before us, could not prosecute the action in Virginia. Moreover, no action has been filed in Virginia, and the Virginia two-year statute of limitations for wrongful death actions has expired. *See* § 8.01–244(b) of the Virginia Code. The defendants' counsel at oral argument admitted that no action could be filed in Virginia unless the bar of limitations were waived. As this Court held in *Johnson v. Searle, supra,* 314 Md. at 523, 552 A.2d at 30, "a circuit court abuses its discretion by unconditionally dismissing actions on the ground of forum non conveniens when the statute of limitations has likely run in the alternative forum." This was clearly not an appropriate case for applying the doctrine of *forum non conveniens.*

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEES TO PAY COSTS.*