915 A.2d 471

**Mabel JONES, et al.**

v.

**Carlton JONES, et al.**

**No. 2780, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Jan. 26, 2007.

Reconsideration Denied March 30, 2007.

430

Gregory L. Lattimer, Washington, DC (Michael S. Rosier, on brief), Latham, for appellant.

Jay H. Creech (David S. Whitacre, County Atty., Alice S. Chong, on brief), for appellee.

Panel DEBORAH S. EYLER, BARBERA and CHARLES E., MOYLAN, JR. (Ret'd, Specially Assigned), JJ.

EYLER, DEBORAH S., J.

In the Circuit Court for Prince George's County, Prince Carmen Jones, Sr., and Candace Jackson, as next friend of Nina Jones, brought a wrongful death action against Corporal Carlton B. Jones, Prince George's County ("the County"), Sergeant Alexandre Bailey, and Police Chief John Farrell, over the shooting death of the decedent, Prince Carmen Jones, Jr. Ms. Jackson was the decedent's fiancée and is the mother of his child. Mr. Jones was the decedent's father.[1]

Mabel S. Jones, M.D., the decedent's mother, was appointed personal representative of his estate, by the Register of Wills of Prince George's County, where the decedent was living at the time of his death. Dr. Jones filed a motion to intervene as a use plaintiff, pursuant to Rule 15–1001, which was granted. Thereafter, she filed a motion for summary judgment, asserting that, because the death occurred in the State of Virginia, the Virginia Wrongful Death Act controlled and, under that act, the personal representative is the only person with standing to bring suit. The circuit court granted summary judgment in favor of Dr. Jones on that ground and "dismissed" the entire case.[2]

The plaintiffs noted an appeal and, before this Court decided the matter, the Court of Appeals issued a writ of *certiorari*. The Court held, *inter alia*, that the plain language of the Maryland Wrongful Death Act provides that, when the *wrongful act* occurs in another state, the substantive law of that state applies; the circuit court therefore erred in ruling that the place of the death, as opposed to the place of the wrongful act, determines as a matter of substance which state's wrongful death statute applies. The Court observed that the allegations against the defendants included some wrongful acts in

---

1. Cpl. Jones and the decedent Jones and his family are not related.

2. At that time, Dr. Jones had pending a wrongful death action in the United States District Court for the District of Columbia. Apparently, that action subsequently was dismissed.

Maryland and others in Virginia. *Jones v. Prince George's County*, 378 Md. 98, 109, 835 A.2d 632 (2003) (*"Jones I"*).

The Court further held that the issue of who has standing to file a wrongful death action in Maryland is procedural, not substantive, and so is governed by the law of the forum state. In Maryland, such matters of procedure are determined by the Maryland statutes on point, the Maryland Rules, and common law standing principles.

The Court ruled that, because neither the Maryland Wrongful Death Act nor the Maryland Rules specify who may properly file a wrongful death action in Maryland when the wrongful acts alleged to have caused the death occurred, at least in part, outside of Maryland, common law standing principles applied; and that, under those principles, the plaintiffs and intervenor were aggrieved people with standing to sue. *Jones I*, at 118, 835 A.2d 632 (citing *Sugarloaf Citizens' Assn. v. Dept. of Env't*, 344 Md. 271, 686 A.2d 605 (1996)). The Court reversed the grant of summary judgment and remanded the case for further proceedings.

On remand, the plaintiffs filed an amended complaint adding a claim for violation of their civil rights under 42 U.S.C section 1983. The defendants then removed the case to the United States District Court for the District of Maryland. That court determined that there was no factual basis alleged that could support the section 1983 claim, and remanded the case to the circuit court.

Beginning on January 9, 2006, a jury trial was held, which resulted in verdicts in favor of the plaintiffs on their claim of violation of the decedent's Fourth Amendment rights and against the plaintiffs on their claims of negligence and battery. The jury awarded $2.5 million in damages to Ms. Jackson, as next friend of Nina; $1 million dollars in damages to Dr. Jones; and $200,000 in damages to Mr. Jones.

Thereafter, Cpl. Jones and the County filed a motion for judgment notwithstanding the verdict ("JNOV"), new trial, or to revise. The court granted the motion in part, striking the judgment in favor of Mr. Jones and Dr. Jones because neither

one was a permissible beneficiary under the Virginia Wrongful Death Act.

Mr. Jones and Dr. Jones each filed notices of appeal. Cpl. Jones and the County then filed a notice of cross-appeal as to those appeals, and a notice of appeal as to the judgment in favor of Ms. Jackson, as next friend of Nina. Ms. Jackson then filed a notice of cross-appeal.

During the pendency of the appeal, Mr. Jones and Ms. Jackson, on behalf of Nina, entered into settlements with Cpl. Jones and the County, and voluntarily dismissed their appeals and cross-appeals. The only remaining appellant is Dr. Jones. Cpl. Jones and the County are the appellees and cross-appellants.

The parties on appeal pose the following questions for review, which we have rephrased:

### By Dr. Jones:

I. Did the trial court err in rejecting her argument that the appellees waived the issue of whether she was a permissible beneficiary under the Virginia Wrongful Death Act and in any event err in ruling that she was not a permissible beneficiary?

### By Cpl. Jones and the County:

II. Did the trial court err in denying Cpl. Jones's motion for judgment on the excessive force constitutional claim for insufficient evidence?

We answer "no" to Dr. Jones's appeal question, and on that basis affirm the judgment in favor of Cpl. Jones and the County on her claim. Because we have resolved the appeal issue in Cpl. Jones's and the County's favor, their issue on cross-appeal is moot.

### FACTS AND PROCEEDINGS

As noted, at the time of his death, the decedent was a resident of Maryland. When the events relevant to this case took place, his fiancée, Ms. Jackson, was living in Fairfax

County, Virginia, with their minor daughter Nina. The decedent's parents, both Maryland residents, had divorced many years prior.

Cpl. Jones was a member of the Prince George's County Police Department. Sgt. Bailey was his supervisor. As mentioned, Chief Farrell was the chief of the police department.

On September 1, 2000, Cpl. Jones and Sgt. Bailey were conducting an undercover surveillance operation, seeking to arrest two men who had stolen a police officer's weapon and were believed to be at large and armed and dangerous. Although they were working together, each officer was driving an unmarked sport utility vehicle ("SUV"). As part of their undercover role, they were unkempt and were dressed in tattered clothing.

The officers began their surveillance in the District of Columbia. They knew that the people they were looking for had been driving a black Jeep Cherokee with Maryland tags. While in the District, Cpl. Jones saw a Jeep with Pennsylvania tags; he determined that that vehicle could have been the Jeep the officers were looking for, with a newly attached set of tags. Cpl. Jones wrote down the Pennsylvania tag number, but then lost sight of the Jeep.

Cpl. Jones then drove to a location in Prince George's County where one of the suspects was known to stay. There, he saw the same black Jeep with the Pennsylvania tags. He paused to run the license plate number, and again lost sight of the Jeep. Sgt. Bailey spotted the Jeep nearby, and the two followed it from Maryland into Virginia.

As it turned out, the Jeep the officers were following belonged to the decedent and was being driven by him. The decedent had nothing whatsoever to do with the suspects or crimes that were being investigated. His ultimate destination that night was Ms. Jackson's house, in Virginia.

Apparently perceiving that he was being followed, the decedent pulled into a driveway (not Ms. Jackson's) on a street in Fairfax County, turned around, and drove back in the di-

rection of Cpl. Jones's SUV. Cpl. Jones started to make a three-point turn in the street, to change course and follow the Jeep. When Cpl. Jones's SUV was in the middle of the three-point turn, and perpendicular to the street, the decedent pulled past Cpl. Jones, put his Jeep into reverse, and backed it into Cpl. Jones's SUV, pinning the driver's side door closed. The decedent then got out of his vehicle and ran toward Cpl. Jones. When Cpl. Jones drew his gun and yelled "police," the decedent returned to his Jeep. He drove forward slightly, away from Cpl. Jones's SUV, but then put his Jeep in reverse and again rammed the SUV. The decedent then pulled forward and it appeared that he was about to back into Cpl. Jones's SUV for the third time. Cpl. Jones fired 16 shots at the decedent. Five shots hit him in the back and one hit him in the arm. The decedent was able to drive a short distance away from Cpl. Jones before collapsing. He died of his wounds a short time later.

The wrongful death action was tried on a number of theories of liability: 1) *constitutional violation:* that Cpl. Jones violated the decedent's Fourth Amendment rights by using excessive force against him, in the process killing him; 2) *negligence:* that Cpl. Jones performed his surveillance task negligently, causing the decedent's death; and 3) *battery:* that Cpl. Jones committed a battery against the decedent, killing him. The excessive force and battery theories were based solely upon conduct of Cpl. Jones that occurred in Virginia. The negligence theory was based upon some conduct of Cpl. Jones in Maryland and other conduct on his part in Virginia. There also were failure to supervise, supervisory liability, and *respondeat superior* claims made against Sgt. Bailey, Chief Farrell, and the County.

The trial court ruled that the evidence adduced was legally insufficient to prove any negligent act by any defendant in the State of Maryland. The theories of liability that were submitted to the jury, by means of a special verdict sheet, were use of excessive force, battery, and negligence (based upon conduct in Virginia only). The court granted motions for judgment

in favor of the *respondeat superior* defendants (except the County); those rulings are not being challenged in this appeal.

The jury deliberated and returned a special verdict finding that Cpl. Jones had used excessive force against the decedent, causing his death; that Cpl. Jones was not entitled to qualified immunity; that Cpl. Jones was negligent in causing the decedent's death; that the decedent was contributorily negligent; and that Cpl. Jones did not commit a battery against the decedent. The jury awarded damages as set forth above.

As explained, the trial court entered an order striking the verdicts in favor of Mr. Jones and Dr. Jones, on the ground that neither one is a permissible wrongful death beneficiary under the Virginia Wrongful Death Act.

## DISCUSSION

### *Appeal*

### I.

Dr. Jones contends that the trial court erred by striking the verdict in her favor on the ground that she is not a permissible wrongful death beneficiary under the Virginia Wrongful Death Act. She argues 1) that this issue was waived by Cpl. Jones (and hence the County) because he did not raise it in his motion for judgment at the close of the evidence, and therefore the trial court was not empowered to grant a JNOV based upon that issue; and 2) "that the Virginia Wrongful Death Act had no application to the litigation below whatsoever."

Cpl. Jones responds that he did not waive the permissible beneficiary issue and that the trial court correctly ruled that the Virginia Wrongful Death Act applied and that neither Mr. Jones nor Dr. Jones, as parents of the decedent, could recover damages in tort for the death of their son.

### Waiver

At the close of all the evidence, defense counsel moved for judgment "as to all counts." He first argued that there

was insufficient evidence to support a finding of any violation of the Maryland constitution. The court granted his motion in that regard. He next argued that there was insufficient evidence to support findings of "supervisory liability" on the part of Sgt. Bailey or for any alleged constitutional violation.

The court granted that motion as well and also ruled that there was no theory of liability on which facts had been generated to take any claim against Sgt. Bailey to the jury. The court also ruled, in the course of responsive arguments by counsel for the plaintiffs, that there was insufficient evidence of any negligent act by any defendant in Maryland so as to send the issue of "Maryland negligence" to the jury.[3] Thus, the negligence claim that would go to the jury was based upon the alleged misconduct of Cpl. Jones in Virginia. Defense counsel also made arguments about qualified immunity, which the court rejected.

In opposing the "Maryland negligence" argument on the motion for judgment, counsel for the plaintiffs told the trial judge that, if he granted the motion, so that only "Virginia negligence" would go to the jury, "the parents will have no claim." The following ensued:

THE COURT: Why do you say that?

[PLAINTIFFS' COUNSEL]: Because under Virginia law, which controls damages, there is no right to recover by the parents.

THE COURT: We don't know that yet.

[PLAINTIFFS' COUNSEL]: Well, I looked at the law. The law, I believe, of Virginia is just what I'm telling you. So, I know that. I mean, I guess I'll have to convince you.

THE COURT: That's going to come in on some post-trial motion, because I have no authority that that is so. . . .

After substantially more argument on other points, the court and counsel moved on to discussing instructions. In reference to a proposed negligence instruction, counsel for the

---

3. The plaintiffs were represented separately from the intervenor.

plaintiffs said, "Your Honor, I just want to hand up to you, if I might, the Virginia wrongful death statute which talks about who is entitled to recover damages. I think you should know that." The judge took the copy of the statute and thanked counsel. Soon after, in ruling upon damages instructions, the court stated:

> And on the damages, we have three categories. I've got Nina for economic and non-economic, and I have Mabel for non-economic, and Prince, Senior, for non-economic. And I know what you're (referring to plaintiffs' counsel) saying about this Virginia Statute, but my inclination is to let this jury have this, and we can argue later about what you just gave me (referring to the Virginia Wrongful Death Statute). I'm not going to have time to really determine whether or not the beneficiaries are excluded under Virginia law....

In response to Dr. Jones's waiver argument, Cpl. Jones counters that the record thus shows that the permissible beneficiaries issue was raised when the motion for judgment was argued (albeit by counsel for the plaintiffs), and that the court then and immediately thereafter during the instruction argument made plain that it was not going to rule then on the question, but would reserve on it until post-trial motions (if any) were filed.

Dr. Jones argues that Rule 2–532, which governs motions for JNOV, makes plain that a party may move for JNOV "only if that party made a motion for judgment at the close of all the evidence and only on the grounds advanced in support of the earlier motion"; and therefore Cpl. Jones and the County could not seek a JNOV on the ground that she was not a permissible beneficiary under the Virginia Wrongful Death Act. Md. Rule 2–532(a). She emphasizes that plaintiffs' counsel, not counsel for the defendants, raised the permissible beneficiary issue.

We disagree. The defendants moved for judgment at the close of all the evidence. It was during the argument on that motion that the question of whether Mr. Jones and Dr. Jones were permissible beneficiaries under the Virginia Wrongful

Death Act was raised. To be sure, the issue was raised by counsel for the plaintiffs and the court made clear that it was not going to rule on the issue at that point, but only after trial, in post-trial motions. Once the issue was raised, however, there is no reason why defense counsel would think it had to be re-raised, especially when the judge plainly had stated that he would address the issue later. On this record, during the argument on the defendants' motion for judgment at the close of the evidence, the trial judge reserved on the issue of whether Mr. and Dr. Jones were permissible beneficiaries; therefore, the issue properly could be raised in a motion for JNOV.

### *Partial JNOV Ruling*

■ As noted, Dr. Jones asserts that the Virginia Wrongful Death Act, Va.Code Ann. (1950, 2000 Repl. vol.), Section 8.01–50 ("Virginia Act"), did not apply to her claims in this case, including the Fourth Amendment excessive force claim she prevailed on, and therefore the trial court erred, as a matter of law, in striking the verdict in her favor. She maintains that all of the plaintiffs' claims, including hers, were made pursuant to the Maryland Wrongful Death Act, Md.Code (1973, 2006 Repl.Vol.), sections 3–901 *et seq.* of the Courts and Judicial Proceedings Article ("CJ") ("Maryland Act"). The parties agree that Dr. Jones was a permissible beneficiary under the Maryland Act but not under the Virginia Act.

In granting the partial JNOV, the trial court ruled that because the only claim on which the plaintiffs recovered (violation of constitution) was premised solely on wrongful acts occurring in Virginia, Virginia substantive law applied; that the right to recover damages for the wrongful death of another is a substantive right created by statute in Virginia; and that under the Virginia Act, the parents of the decedent in this case did not have any such right.

The Virginia Act includes a "class and beneficiaries" section that in pertinent part provides that damages awarded for wrongful death shall be distributed to,

(i) the surviving spouse, children of the deceased and children of any deceased child of the deceased or (ii) **if there be none such,** then to the parents, brothers and sisters of the deceased, and to any other relative who is primarily dependent on the decedent for support or services and is also a member of the same household as the decedent . . . .

Va.Code Ann. § 8.01–53 (emphasis added). The language makes clear that a parent of the decedent only is a beneficiary entitled to recover damages for wrongful death if there is no surviving spouse, child, or grandchild of a deceased child. Here, the decedent had a surviving child; therefore, neither Mr. Jones nor Dr. Jones was a member of the class of beneficiaries entitled to wrongful death damages under the statute.

In the case at bar, the wrongful act (excessive force in violation of the decedent's constitutional rights) was found by the jury to have occurred in Virginia. When suit was filed, in Maryland, the plaintiffs were alleging wrongful acts in both Maryland and Virginia. As the forum state, Maryland's procedural law governed. *Rein v. Koons Ford, Inc.,* 318 Md. 130, 567 A.2d 101 (1989) (citing *Billingsley v. Lincoln Nat'l Bank,* 271 Md. 683, 320 A.2d 34 (1974)). CJ section 3–903 expressly provides that in a wrongful death action, if the "wrongful act" occurred in another state, a Maryland court shall apply the substantive law of that state. Thus, to the extent that the wrongful act in the case at bar occurred in Virginia, Virginia substantive law applied.

The question on appeal, then, is whether the provision we have quoted above in the Virginia Act, identifying the permissible beneficiaries in a wrongful death action, is substantive or procedural.

Dr. Jones relies upon *Jones I* to argue that the permissible beneficiary issue is procedural, not substantive, and hence is controlled by the Maryland Act. As we have explained, the question before the Court in *Jones I* was who had standing to bring suit in Maryland for wrongful death when some of the alleged wrongful acts occurred in Maryland and others oc-

curred in another state. The Court held that standing is a procedural matter, and therefore is governed by the law of the forum state, *i.e.*, Maryland.

To be sure, the Court of Appeals in *Jones I* ruled that the issue of who has *standing* to bring a wrongful death action is procedural, not substantive, and therefore is governed by the law of the forum. It did not rule, however, as Dr. Jones asserts, that the issue of who is a *permissible beneficiary* in an action for wrongful death is procedural, not substantive, and likewise is governed by the law of the forum.

■ "There is no reason to classify an issue as procedural, and hence controlled by the law of the forum, unless it affects the manner in which the forum administers justice." *Jacobs v. Adams,* 66 Md.App. 779, 791, 505 A.2d 930 (1986). As written in the treatise AMERICAN CONFLICTS LAW:

> [P]rocedural rules should be classified as those which concern methods of presenting to a court the operative facts upon which legal relations depend; substantive rules [are] those which concern the legal effect those facts after they have been established.

Luther L. McDougall, III, Robert L. Felix & Ralph U. Whitten, AMERICAN CONFLICTS LAW, section 110, p. 403 n. 2 (5th ed. 2001) (quoting G. Stumberg, *Conflict of Laws 133* (3rd ed.1963)). See also RESTATEMENT (FIRST) OF CONFLICTS OF LAWS § 412 cmt. a (1934) ("The right to damages in compensation or punishment for a tort is to be distinguished from the right of access to the courts and from the procedure provided to obtain the damages . . . .") (*cited with approval* in *Black v. Leatherwood Motor Coach Corp.,* 92 Md.App. 27, 41, 606 A.2d 295 (1992)).

■ The issue of standing clearly relates to the "manner in which the forum administers justice" because it affects who has access to the courts. In contrast, the issue of who is a permissible wrongful death beneficiary under a wrongful death statute that creates a right of recovery in certain people does not relate to the way in which the forum court adminis-

ters justice. Rather, it concerns the scope of the right of recovery the statute creates:

> All matters pertaining to the substantive right of recovery under a wrongful death statute, including the right to recover, the nature of the right and the party in whom it is vested, are governed by the law of the state where the injury [or act] resulting in the death occurred.

*Kaufmann v. Service Trucking Co.*, 139 F.Supp. 1, 5 (D.Md. 1956) (applying Maryland law and citing *Betts v. Southern R. Co.*, 71 F.2d 787 (4th Cir.1934)).

Unlike the issue of standing, which is procedural, the issue of who has the legal right to recover damages for the wrongful death of a decedent is substantive. In this case, liability for wrongful death of the decedent was based solely upon the wrongful act of Cpl. Jones in the State of Virginia. The Maryland Act directs a Maryland court to apply the substantive wrongful death law of the state in which the wrongful act occurred. CJ § 3–903(a).

Accordingly, the question of who has a legal right to recover damages for the wrongful death of decedent Prince Carmen Jones, Jr., is controlled by the Virginia Act. That statute makes clear that, because the decedent was the father of a surviving minor child, neither of his parents could recover damages for his wrongful death. Because Dr. Jones did not have a substantive legal right to recover damages for the decedent's wrongful death, under the law of Virginia, the circuit court properly struck the verdict in her favor.

## II.

### *Cross–Appeal*

As stated above, our disposition of Dr. Jones's appeal renders Cpl. Jones's and the County's cross-appeal moot.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**