**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 08-1397**

---

MABEL S. JONES, individually and as the next best friend and personal representative of the estate of Prince Carmen Jones, Jr.,

        Plaintiff - Appellant,

    and

CANDACE JACKSON,

        Intervenor – Plaintiff,

    v.

PRINCE GEORGE'S COUNTY, MARYLAND; CARLTON B. JONES, Officer, Prince George's County Police Department in both his official and individual capacities,

        Defendants – Appellees,

    and

ALEXANDRE BAILEY; JOHN S. FARRELL,

        Defendants,

    v.

INOVA HEALTH SYSTEM FOUNDATION; ROBERT F. HORAN; J. THOMAS MANGER; PRINCE CARMEN JONES, SR.,

        Movants.

---

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Alexander Williams, Jr., District Judge. (8:04-cv-03044-AW)

Argued:  September 25, 2009          Decided:  December 8, 2009

Before WILKINSON and DUNCAN, Circuit Judges, and Damon J. KEITH, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Gregory L. Lattimer, LAW OFFICES OF GREGORY L. LATTIMER, Washington, D.C., for Appellant.  Jay Creech, Shady Side, Maryland, for Appellees.  **ON BRIEF:** Ted Williams, Washington, D.C., for Appellant.  Timothy W. Fitzmaurice, Upper Marlboro, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal arises from a district court order granting a defendant's motion for summary judgment in an action brought pursuant to 42 U.S.C. § 1983; the Maryland Survival Act, Md. Code Ann., Est. & Trusts § 7-401(y); and the Virginia Wrongful Death Act, Va. Code Ann. § 8.01-50. The district court held that under state law, Appellant Mabel S. Jones ("Appellant"), as personal representative of her son's estate, is barred from recovering under the Maryland Survival Act when the decedent's father and the guardian of the decedent's daughter settled a claim under the Virginia Wrongful Death Act for the same incident. For the reasons that follow, we affirm.

I.

On September 1, 2000, at around 1:00 a.m., Prince Carmen Jones, Jr. ("Decedent") was driving north on Georgia Avenue in Washington, D.C. Two members of the Prince George's County Police Department, Corporal Carlton B. Jones and Sergeant Alexandre Bailey, followed Decedent's vehicle because they believed it belonged to Darryl Gilchrest, a suspect in a criminal investigation. They followed Decedent from D.C. into Prince George's County, Maryland; back through D.C.; and then into Fairfax County, Virginia. Decedent resided in Maryland but

3

was driving to Virginia to visit his fiancée Candace Jackson. After Decedent pulled into a driveway, Corporal Jones pulled up behind him and exited his vehicle. When Decedent attempted to flee, Corporal Jones fired sixteen shots at him. Decedent was hit by five bullets in the back and one in the arm. He died a short time later in Virginia.[1]

On December 5, 2000, Appellant brought a seven-count complaint against Corporal Jones, Sergeant Bailey, Prince George's County ("County"), and Chief of Police John S. Farrell (collectively, "Defendants") in the United States District Court for the District of Columbia. The complaint alleged a constitutional violation under 42 U.S.C. § 1983, and various tort claims under the Maryland Survival Act and the Virginia Wrongful Death Act, including assault and battery, negligent training and supervision, and intentional and negligent infliction of emotional distress. On March 22, 2004, the case was transferred to the United States District Court for the District of Maryland. A year later, on April 28, 2005, the district court granted summary judgment to Chief Farrell,

---

[1] The details of the events leading up to the Decedent's death are set forth in greater detail in Jones v. Prince George's County ("Jones I"), 835 A.2d 632, 635 (Md. 2003) and Jones v. Jones ("Jones II"), 915 A.2d 471, 474-75 (Md. Ct. Spec. App. 2007).

4

Sergeant Bailey, and the County. Only Appellant's claims against Corporal Jones remained.

While Appellant's lawsuit was pending, Prince Carmen Jones Sr. ("Jones Sr."), the Decedent's father, and Candace Jackson, as guardian of Decedent's daughter Nina Jones ("Nina"), brought a Maryland Wrongful Death Act, Md. Code Ann., Cts. & Jud. Proc. § 3-904, action in the Circuit Court for Prince George's County against Defendants. Soon after, the court allowed Appellant to intervene under Maryland Rule 15-1001.[2] On January 9, 2006, a

---

[2] Thereafter, Appellant filed a motion for summary judgment, asserting that, because the death occurred in Virginia, the Virginia Wrongful Death Act controlled and, under that act, the personal representative is the only person with standing to bring suit. The circuit court granted summary judgment on that ground and dismissed the entire case. Jackson and Jones Sr. noted an appeal and the court of appeals issued a writ of certiorari. The court held, inter alia, that the plain language of the Maryland Wrongful Death Act provides that, when the wrongful act occurs in another state, the substantive law of that state applies; the circuit court therefore erred in ruling that the place determines as a matter of substance which state's wrongful death statute applies. Jones I, 837 A.2d 638-39. The court observed that the allegations against the defendants included some wrongful acts in Maryland and others in Virginia. Id. at 639.

The court further held that the issue of who has standing to file a wrongful death action in Maryland is procedural, not substantive, and thus is governed by the law of the forum state, Maryland. Id. at 640. In addition, the court ruled that, because neither the Maryland Wrongful Death Act nor the Maryland Rules specify who may properly file a wrongful death action in Maryland when the wrongful acts alleged to have caused the death occurred, at least in part, outside of Maryland, common law standing principles applied. Id. at 644. Under those
(Continued)

jury found liability and awarded damages to the plaintiffs. Jackson was awarded $2.5 million, Appellant was awarded $1 million, and Jones Sr. was awarded $200,000.[3] Thereafter, Corporal Jones and the County moved for judgment notwithstanding the verdict, for a new trial, or to revise the judgment. The trial court granted the motion in part, striking the judgment in favor of Appellant and Jones Sr. because neither party was a permissible beneficiary under the Virginia Wrongful Death Act.

Appellant and Jones Sr. appealed the trial court's decision. Before the appeal came to fruition, however, Defendants settled with Jones Sr. and Jackson.[4] Pursuant to that

principles, the court found that the plaintiffs and intervenor were aggrieved people with standing to sue. Id. Accordingly, the court reversed the grant of summary judgment and remanded the case for further proceedings. Id. at 646.

[3] Soon after the jury trial, on January 20, 2006, Appellant voluntarily dismissed her wrongful death claim in the Maryland district court matter, explaining:

> Nina Jones is the exclusive beneficiary in plaintiff's Virginia Wrongful Death Action and she is only entitled to one recovery as a matter of law.
>
> . . . Because a wrongful death claim has been fully adjudicated on her behalf, it would be contrary to law and inefficient to continue parallel litigation on this issue . . . .

J.A. 32.

[4] Nevertheless, the Court of Special Appeals of Maryland issued an opinion. Jones II, 915 A.2d 471. In that opinion, (Continued)

6

settlement, which the Circuit Court for Prince George's County approved on September 27, 2006, Jones Sr. would receive $200,000, and Jackson would receive $2.3 million for Nina's benefit.

Once the settlement was approved, on September 7, 2007, Corporal Jones filed a motion for summary judgment in Appellant's earlier Maryland lawsuit. Corporal Jones argued that under Virginia law, Appellant was barred from recovering under a survival statute when the appropriate beneficiary had already recovered under the Virginia Wrongful Death Act. By contrast, Appellant argued that her son's death gave rise to two separate and distinct claims--one under the Virginia Wrongful Death Act and one under the Maryland Survival Act--that serve

---

the court affirmed the trial court's judgment, holding that it properly struck the verdicts in favor of Jones Sr. and Appellant. Specifically, the court held that under the Maryland Wrongful Death Act, when the wrongful act that caused the death was committed in another state, the substantive law of that other state applies. Id. at 479. Finding the wrongful act by Corporal Jones was committed in Virginia, the court held the Virginia Wrongful Death Act applied. Id. at 478-79. The court noted that the right to recover damages for wrongful death, unlike the issue of standing to file a wrongful death action addressed in Jones I, is a matter of substantive law, not procedural law. The Virginia Wrongful Death Act thus determined the permissible beneficiaries. Id. Under the Virginia Wrongful Death Act, a parent of an adult child decedent is not a permissible beneficiary if the adult child decedent is survived by a minor child. Id. at 479. Accordingly, the court found that Appellant did not have a substantive right of recovery for wrongful death under Virginia law. Id.

different purposes and accomplish entirely different results. In essence, she said the disposition of one claim could not bar the other.

On April 2, 2008, the district court granted Corporal Jones's motion for summary judgment, reasoning that "Virginia's wrongful death statute, and the body of case law surrounding it, explicitly and unequivocally establish that there can only be one recovery for the same injury." J.A. 72 (emphasis omitted). That same day, Appellant appealed from this order.

## II.

We first determine which matters are properly before us in this appeal. Appellant's notice of appeal explicitly states that Appellant is appealing "to the United States Court of Appeals for the Fourth Circuit from the <u>Court's Order granting Defendants' Motion for Summary Judgment entered on the 2nd day of April, 2008.</u>" J.A. 139 (emphasis added). In her brief and at oral argument, however, Appellant also challenged the district court's April 28, 2005, order granting summary judgment to all defendants but Corporal Jones.[5] Specifically, Appellant argues

---

[5] The April 28, 2005, order has been appealed by the parties once before. However, those appeals were dismissed before the issues reached this court. On May 16, 2005, Corporal Jones filed a notice of appeal challenging the district court's ruling
(Continued)

that no basis existed for dismissing her § 1983 claims against the County.

Federal Rule of Appellate Procedure 3(c)(1)(B) provides that the notice of appeal must "designate the judgment, order, or part thereof being appealed." Generally, the requirements of Rule 3 are liberally construed, see Torres v. Oakland Scavenger Co., 487 U.S. 312, 316 (1988), and an appeal from a final judgment brings into question all previous rulings leading to the judgment, see McLaurin v. Fischer, 768 F.2d 98, 101 (6th Cir. 1985). That said, "[s]ubjecting Rule 3 to a liberal construction does not . . . excuse compliance with the rule." Nolan v. U.S. Dep't of Justice, 973 F.2d 843, 846 (10th Cir. 1992). Because the dictates of Rule 3 are jurisdictional, each requirement must be satisfied as a prerequisite to appellate review. Smith v. Barry, 502 U.S. 244, 248 (1992). Where the notice of appeal designates specific rulings being appealed,

on the issue of qualified immunity. On May 31, 2005, Appellant filed a cross-appeal, challenging the district court's dismissal of her claims against the County. On September 2, 2005, this court granted Appellant's motion to dismiss Corporal Jones' appeal, and pursuant to Appellant's motion to withdraw her appeal to permit the case to move forward in district court, Appellant's cross-appeal was also dismissed. In addition, these appeals were not interlocutory appeals, as Appellant argued, because the April 28th, 2005, order was not of a nature to be "'effectively unreviewable on appeal from final judgment.'" Lauro Lines S.R.V. v. Chasser, 490 U.S. 495, 498 (1989) (quoting Richardson-Merrell Inc. v. Koller, 472 U.S. 424, 431 (1985)).

9

this court has no jurisdiction to review other judgments or issues which are not expressly referenced or even impliedly intended for appeal. See Foster v. Tandy Corp., No. 86-1726, 1987 WL 46367, at *8 (4th Cir. Sept. 16, 1987) (entry of directed verdict not appealed when notice of appeal addressed only the grant of a judgment notwithstanding the verdict); Gunther v. E.I. Du Pont De Nemours & Co., 255 F.2d 710, 717 (4th Cir. 1958) ("[S]ince the jurisdiction of the appellate court is determined by the timeliness and specific terms of the notice, it cannot be modified to cover a judgment not included by any reasonable interpretation . . . .").

Here, the notice of appeal explicitly referenced the district court's April 2, 2008, order but failed to designate the April 28, 2005, order. Appellant argues her intent to appeal that order was obvious because she named the County as an appellee. "While the intent to appeal may be obvious from the procedural history of a case or from the appeal information form completed by an appellant," no such intent is obvious here. Parkhill v. Minn. Mut. Life Ins. Co., 286 F.3d 1051, 1059 (8th Cir. 2002). Appellant's appeal information form does not mention the April 28, 2005, order, and the issues resolved in that order were not revisited or addressed in the April 2, 2008, order. The County easily could have assumed that Appellant

10

would not appeal the April 28, 2005, order when she failed to include that order in her notice of appeal and in the appeal information form. Moreover, the April 28, 2005, order had already been appealed once before, and nothing in the record indicates Appellant intended to appeal that order again. We thus lack jurisdiction to review the district court's April 28, 2005, order, and turn our attention to the April 2, 2008, order, which is all that is before us for review.

## III.

Having determined our scope of review, we now turn to Appellant's arguments regarding the April 2, 2008, order. As noted above, in that order, the district court dismissed Appellant's remaining claims against Corporal Jones, finding Virginia law barred Appellant from recovering under the Maryland Survival Act. On appeal, Appellant challenges the district court's application of Virginia law to her Maryland Survival Act claim. First, she avers that Maryland's survival statute differs from the Virginia Wrongful Death Act because it is conceptually designed to redress the interests of the decedent's estate, whereas the Virginia Wrongful Death Act is intended to redress the interests of designated beneficiaries. Second, she contends that the present case makes out a sufficiently clear

11

and strong public policy in favor of allowing her Maryland Survival Act claim to proceed. Finally, she posits that Corporal Jones waived his right to assert that Virginia law bars the present action by failing to timely assert such an argument as an affirmative defense in his answer to her complaint. These arguments are discussed separately below.

A.

We first consider the argument that Virginia and Maryland law serve entirely different functions, such that Maryland should not apply Virginia's law to this case. Although we are sympathetic to Appellant's argument, we find that her argument does not fairly reflect Maryland's own approach to choice of law analysis. In Maryland, courts adhere to the traditional lex loci delicti rule for torts, which provides that the state in which the harm occurred is the state that provides the substantive cause of action to the injured party. Philip Morris Inc. v. Angeletti, 752 A.2d 200, 230 (Md. 2000). Thus, even if Maryland would have an interest in applying its own substantive law, Maryland's choice of law principles compel the application of Virginia law in this case. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Recognizing that Decedent's

shooting and death occurred in Virginia, the district court correctly concluded that Virginia's substantive law controls.

Virginia recognizes a survival action for injuries sustained by the victim. See Va. Code Ann. § 8.01-25. However, unlike the law of Maryland, the law of Virginia dictates that a survival action brought in Virginia converts to a wrongful death action if the victim dies from that particular injury or wrongful act. See Va. Code Ann. §§ 8.01-25, 8.01-56; see also El-Meswari v. Wash. Gas Light Co., 785 F.2d 483, 490 (4th Cir. 1986) ("[Section] 8.01-25 defers to the wrongful death statute as the exclusive statement of the grievances that Virginia will recognize when a tort victim dies of her injuries."); Wright v. Eli Lilly and Co., 65 Va. Cir. 485, 495 (Va. Cir. Ct. 2004) ("[I]f the [decedent's] death is due to the same injury which is the subject of a pending personal injury action, the pending action is converted to one for wrongful death."). Consequently, under Virginia law, "a person may not recover for the same injury under the survival statute and the wrongful death statute" if that injury or wrongful act resulted in the victim's death. Hendrix v. Daugherty, 457 S.E.2d 71, 75 (Va. 1995); see also Va. Code Ann. § 8.01-56 (explaining there can "be but one recovery for the same injury").

Here, because Nina has already recovered under the Virginia Wrongful Death Act in the state proceeding, Appellant cannot recover under the Maryland Survival Act.[6]  Under Virginia law, negligent conduct by one person causing the death of another gives rise to only one cause of action.  This cause of action is provided in lieu of any other form of recovery against the wrongdoer based on the same wrongfully caused death.  In Virginia, therefore, a judgment under the Virginia Wrongful Death Act is conclusive between the parties as to all rights arising from the operative facts.  See Semler v. Psychiatric Inst. of Wash. D.C., Inc., 575 F.2d 922, 931 (D.C. Cir. 1978). This must also be the effect of Nina's recovery in the Circuit

---

[6]  Appellant argues that Nina cannot be said to have recovered under the Virginia Wrongful Death Act because the state proceeding involved a Maryland wrongful death claim. Admittedly, Nina and Jones Sr. filed a claim for wrongful death in Maryland, and the Maryland Supreme Court in Jones I determined that "the general Maryland choice of law principles concerning the right to bring an action disclose that, for the purposes of the wrongful death statute, this is a procedural issue governed by the law of [Maryland]."  835 A.2d at 640. Yet, by the same token, both Jones I and Jones II recognized that Virginia's substantive law applied to conduct that occurred in Virginia, see Jones I, 835 A.2d at 639; Jones II, 915 A.2d at 479, and the claims ultimately presented to the jury were all based upon conduct that occurred in Virginia exclusively, see Jones II, 915 A.2d at 475.  Thus, although procedurally the matter was brought under Maryland law, the "legal right to recover damages for the wrongful death of [the Decedent] [was] controlled by the Virginia Act."  Id. at 479.

Court of Prince George's County.[7]  We therefore find no error in the district court's conclusion that Virginia law bars Appellant from proceeding under the Maryland Survival Act.[8]

B.

We turn next to Appellant's contention that this case presents a sufficiently clear and strong public policy to disregard the lex loci delicti doctrine in favor of allowing her

---

[7] Appellant insists that Nina did not recover damages pursuant to a court judgment but instead chose to settle her claims, and thus cannot be said to have recovered under the Virginia Wrongful Death Act.  Nina obtained a settlement because she had a wrongful death claim, and as Jones II recognized, her legal right to recover was controlled by the Virginia Wrongful Death Act.  915 A.2d at 479.  The parties reached their settlement knowing Virginia's substantive law controlled, and, in that settlement, Nina agreed to "release any and all claims . . . [she was] entitled to bring on her own behalf," including her wrongful death claim.  J.A. 45.  Accordingly, and contrary to Appellant's assertions, Nina recovered under Virginia's wrongful death statute in the state proceeding.

[8] In reaching this conclusion, we do not decide whether the abatement of Appellant's § 1983 claims based on Virginia state law is permissible--that is, whether Officer Jones's conduct constitutes a clear deprivation of federal rights.  We recognize that after Robertson v. Wegmann, 436 U.S. 584, 594 (1978), and Carlson v. Green, 446 U.S. 14, 24 (1980), it would appear that a federal rule of survival supersedes any state law requiring abatement when the acts of § 1983 defendants caused the death of the injured party.  See, e.g., McFadden v. Sanchez, 710 F.2d 907, 911 (2d Cir. 1983); O'Connor v. Several Unknown Corr. Officers, 523 F. Supp. 1345, 1348 (E.D. Va. 1981).  We do not reach this issue here, however, because Appellant failed to raise it in her opening brief, and it is therefore waived.  See, e.g., Rowland v. Am. Gen. Fin., Inc., 340 F.3d 187, 191 n.1 (4th Cir. 2003).

15

Maryland Survival Act claim to proceed.  It is true that "where an overriding issue of the forum's public policy is at stake, such public policy may provide a sufficient basis for overruling the principle of lex loci delicti and applying forum law to the case."  Black v. Leatherwood Motor Coach Corp., 606 A.2d 295, 303 (Md. Ct. Spec. App. 1992).  Here, however, Appellant has not shown that the right to recover under both wrongful death and survival statutes is a matter of important public policy for Maryland, and without guidance from the Maryland courts, we will not presume such a policy exists.  Given that no case law or statute has been shown to support the importance of this public policy, and given the few limited circumstances Maryland courts have been willing to depart from the lex loci delicti doctrine for public policy purposes, see, e.g., Hauch v. Connor, 453 A.2d 1207, 1214 (Md. 1983), Powell v. Erb, 709 A.2d 1294, 1298 (Md. 1998), and Lab. Corp. of Am. v. Hood, 911 A.2d 841, 849-50 (Md. 2006),[9] we find the district court did not err in adhering to the lex loci delicti doctrine.

---

[9] Appellant's reliance on Hauch, Powell and Hood is misplaced.  Those are state law cases in which Maryland courts found particular matters of state policy, rooted in statute and case law, to present public policy sufficiently powerful to overwhelm lex loci delicti and require the application of local law.  In the absence of any explanation why Maryland would find such a similarly powerful interest here, we will not presume the right to make such a determination on its behalf.

C.

Finally, we turn our attention to Appellant's argument that Corporal Jones waived his right to assert the Virginia statutory bar to double recovery because he did not assert this affirmative defense in his answer to the complaint. See Fed. R. Civ. P. 8(c). We disagree. As Corporal Jones notes, there was no basis for raising Virginia's statutory bar to double recovery until Nina recovered pursuant to the Virginia Wrongful Death Act in September 2006. See Ahmed v. Nat'l R.R. Passenger Corp. (Amtrak), No. 94-2438, 1995 WL 378599, at *3 (4th Cir. June 27, 1995). Indeed, once the settlement in the state proceeding was approved, Corporal Jones immediately notified the trial court of the issue at a telephone conference held on October 31, 2006. Appellant thus cannot show Corporal Jones's delay was accompanied by actual prejudice, bad faith or futility. See, e.g., Defender Indus., Inc. v. Nw. Mut. Life Ins. Co., 938 F.2d 502, 508 (4th Cir. 1991) (mere delay, when unaccompanied by actual prejudice, bad faith, or futility, does not justify denial of leave to amend answer to assert affirmative defense), cert. denied, 113 S. Ct. 3038 (1993).

## IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.