*HBC US Propco Holdings, LLC v. Federal Realty Investment Trust*, No. 558, Sept. Term 2022.  Opinion by Arthur, J.

**CIVIL PROCEDURE—MOTION TO DISMISS—SECTION 6-104(a) OF THE COURTS AND JUDICIAL PROCEEDINGS ARTICLE**

Section 6-104(a) of the Courts and Judicial Proceedings Article of the Maryland Code (1974, 2020 Repl. Vol.) permits a circuit court to dismiss an action if, "in the interests of substantial justice," the action "should be heard in another forum."  In essence, section 6-104(a) permits a Maryland court to dismiss an action if another State is another more convenient forum than Maryland.  Under section 6-104(a), a court, in its analysis, must balance the "public factors of systemic integrity" in addition to "private concerns."  The public factors include the fairness of imposing jury duty on a community with little or no relationship to the controversy, the interest in having local controversies decided locally, and the appropriateness of having a trial in the forum that is familiar with the governing law.  The private concerns involve the convenience of the parties and witnesses.

**CIVIL PROCEDURE—MOTION TO DISMISS—PARALLEL LITIGATION**

In this case, appellant filed its complaint in the Circuit Court for Montgomery County, Maryland, minutes before appellee filed its complaint in the Court of Common Pleas in Montgomery County, Pennsylvania.  The two cases arose from the same transactions, involved identical legal issues, and were mirror images of each other.  The circuit court determined that there was parallel litigation in Pennsylvania and Maryland and dismissed the appellant's complaint in favor of the Pennsylvania litigation.

The Appellate Court of Maryland held that the circuit court did not abuse its discretion in dismissing appellant's complaint, based in part on its determination that the dispute should go forward in only one jurisdiction: Pennsylvania.  The litigation concerned a guaranty on the lease of a retail property that was located in Pennsylvania; the lease was governed by Pennsylvania law; it was apparent from the appellant's complaint that many of the witnesses would probably be residents of Pennsylvania; and the appellant sought an injunction to prohibit the redevelopment of the property in Pennsylvania.  The public and private costs of duplicative litigation, as well as the possibility of conflicting rulings and conflicting judgments if the case proceeded on two separate tracks in two different states, required the court to make a reasonable determination about which jurisdiction was the most appropriate forum.  The circuit court reasonably concluded that the case should proceed in Pennsylvania even though the appellee is a Maryland real estate investment trust, which would not be inconvenienced if it were required to defend itself in Maryland.

**CIVIL PROCEDURE—FIRST-TO-FILE RULE—ANTICIPATORY FILING**

Where identical actions are pending concurrently in two courts, the first-to-file rule generally provides that the suit that was filed first should have priority. The policy underlying the first-to-file rule is the avoidance of duplicative litigation and conservation of judicial resources. Exceptions to the first-to-file rule are common where justice or expediency requires. The exceptions include bad faith filing, anticipatory filing, and forum shopping.

An anticipatory filing is improper when it attempts to exploit the first-to-file rule by securing a venue that differs from the one that the filer's adversary would be expected to choose. An improper anticipatory filing is one made under the apparent threat of a presumed adversary filing the mirror image of that suit in a different court.

In this case, appellant had actual knowledge of appellee's intention to file suit, had reason to suspect that appellee would probably file suit in Pennsylvania, and in response, filed a preemptive declaratory judgment action in Maryland, a forum that it thought might look more skeptically at appellee's damages claims than a Pennsylvania court would. The Appellate Court of Maryland held that, in these circumstances, the circuit court did not abuse its discretion by discounting the importance of appellant's choice of a Maryland forum. Because of the anticipatory nature of appellant's filing, it was appropriate for the court to refrain from a rigid and inflexible application of the first-to-file rule.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 558

September Term, 2022

_____

HBC US PROPCO HOLDINGS, LLC

V.

FEDERAL REALTY INVESTMENT TRUST
_____

Arthur,
Ripken,
Wilner, Alan M.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Arthur, J.
_____

Filed: September 1, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

** Tang, J., and Albright, J., did not participate
in the Court's decision to designate this opinion
for publication pursuant to Md. Rule 8-605.1.

* At the November 8, 2022, general election, the voters of Maryland ratified a
constitutional amendment changing the name of the Court of Special Appeals of
Maryland to the Appellate Court of Maryland.  The name change took effect on
December 14, 2022.

This case concerns whether a Maryland court erred or abused its discretion in dismissing a lawsuit on the ground that "in the interest of substantial justice" it "should be heard in another forum," outside of the State of Maryland. *See* Md. Code (1974, 2020 Repl. Vol.), § 6-104(a) of the Courts and Judicial Proceedings Article.

The parties to this case are appellant HBC Propco US Holdings LLC ("HBC") and appellee Federal Realty Investment Trust ("FRIT"). HBC is a Delaware limited liability company that has its principal place of business in New York. FRIT is a Maryland real estate investment trust that has its principal place of business in Montgomery County, Maryland.

HBC is the guarantor of a lease of a commercial property in Pennsylvania. The lease is governed by Pennsylvania law. The tenant has defaulted on the lease. FRIT is the landlord.

After FRIT demanded payment from HBC on the guaranty, HBC filed suit in the Circuit Court for Montgomery County, Maryland, seeking a declaration that it has no liability on the guaranty, as well as other relief. Minutes later, FRIT filed suit in the Court of Common Pleas in Montgomery County, Pennsylvania, where the leased property is located, seeking to recover on the guaranty.

On FRIT's motion, the Maryland court dismissed HBC's complaint on the ground that the case should be heard in Pennsylvania. HBC appealed. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Premises, Lease, and Guaranty

In 1953, the parties' predecessors-in-interest entered into a commercial lease for a department store located in a shopping center in Bala Cynwyd, Pennsylvania. In 2010, after a series of assignments, FRIT had become the landlord, and Lord & Taylor LLC had become the tenant.

On December 27, 2010, FRIT and Lord & Taylor amended the lease to extend the lease term until 2031. In that lease amendment, FRIT agreed to obtain Lord & Taylor's consent before redeveloping all or a portion of an area that included Lord & Taylor's premises. The parties agreed that the amendment "shall be governed by the laws of the Commonwealth of Pennsylvania."

As an inducement for FRIT to enter into the lease amendment, Lord & Taylor's parent, Lord & Taylor Holdings LLC, agreed to guarantee the performance of the lease obligations, including the payment of the sums to which Lord & Taylor, as tenant under the lease, might be legally liable to the landlord, FRIT. In the guaranty, Lord & Taylor Holdings submitted to personal jurisdiction in Pennsylvania for the enforcement of the guaranty.

At some point, HBC became the successor-in-interest to Lord & Taylor Holdings under the guaranty. In 2019, Lord & Taylor was sold to Le Tote, Inc., which became the tenant under the lease.

**B. Default and Bankruptcy**

HBC alleges that, until March of 2020, Lord & Taylor had performed its obligations under the lease, including the payment of all rent obligations. By the end of March 2020, however, the COVID-19 pandemic had been declared a national emergency. In that same month, the Governor of Pennsylvania ordered all non-essential businesses to close and implemented a stay-at-home directive for numerous counties, including Montgomery County, Pennsylvania, the location of the leased premises. HBC alleges that, as a result of the restrictions, "Lord & Taylor was legally prohibited from operating a retail store" at the leased premises.

On June 25, 2020, FRIT sent Lord & Taylor a notice of default because of its failure to pay amounts due to it under the lease.

In August 2020, Lord & Taylor's store operator, Le Tote, filed a petition for protection from its creditors under Chapter 11 of the United States Bankruptcy Code. The bankruptcy court entered an order authorizing the rejection of the lease on January 31, 2001.[1] FRIT filed claims in Le Tote's bankruptcy case to attempt to recover the amounts that the tenant had failed to pay under the lease, as amended.

On Thursday, May 13, 2021, FRIT, through an attorney in southern New Jersey, sent a notice of demand for payment, by Federal Express, to HBC.[2] The notice

---

[1] Under 11 U.S.C. § 365(a), a debtor has the right to reject executory contracts and unexpired leases.

[2] The attorney has an office in Lawrenceville, New Jersey, which is just across the Delaware River from Bucks County, Pennsylvania, a suburb of Philadelphia.

demanded payment of $20,931,205.75 due under the guaranty to HBC, for amounts owed through the end of the lease term in 2031. In addition, the notice alerted HBC that FRIT intended to file suit should HBC fail to pay: "If Guarantor fails to immediately pay the Guarantied Obligations in full, Landlord reserves the right to pursue all rights and remedies under the Lease, at law and/or in equity."

## C. The Lawsuits

At 11:26 a.m. on Friday, June 4, 2021, HBC filed a complaint in the Circuit Court for Montgomery County, Maryland. HBC's complaint includes 12 counts for declaratory and injunctive relief. Counts I though VII seek a declaration that HBC has no obligation under the lease or guaranty to pay amounts demanded by FRIT based on various defenses; Counts IX through XI seek declarations that FRIT is not entitled to payment of amounts due under the lease because the lease was frustrated and became both impossible to perform and commercially impractical because of the Pennsylvania state and local COVID-19 orders; and Count XII requests that FRIT be enjoined from redeveloping the leased premises and the shopping center in which the premises are located and that FRIT be ordered, instead, to continue operating the shopping center "as required under the lease." HBC's complaint acknowledges that Pennsylvania law governs the interpretation of the lease.

On that same morning, 21 minutes after HBC filed its complaint, FRIT filed suit against HBC in the Court of Common Pleas in Montgomery County, Pennsylvania. Asserting claims based on breach of the guaranty, estoppel, and unjust enrichment, FRIT requested judgment in its favor in the amount of $20,931,205.75. The claim for damages

4

included the amount of rent that the tenant had failed to pay through the date when it rejected the lease and the additional amounts that would come due throughout the remainder of the lease term, which runs until 2031.

### D. The Motion to Dismiss

On July 6, 2021, FRIT moved to dismiss the action filed by HBC in the Circuit Court for Montgomery County, Maryland, on grounds of forum non conveniens. FRIT relied on section 6-104(a) of the Courts and Judicial Proceedings Article. Section 6-104(a) provides as follows:

> If a court finds that in the interest of substantial justice an action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions it considers just.

In its motion, FRIT argued that the case did "not belong in Maryland" because the real property at issue was located in Pennsylvania, the lease and other governing documents at issue were governed by Pennsylvania law, most of the material witnesses were in Pennsylvania, and a lawsuit was pending in Pennsylvania involving the same parties, the same facts, the same property, the same issues, and the same law. FRIT also argued that neither the judiciary nor the people of Maryland had an interest in the disposition of a Pennsylvania shopping center and that a Maryland court should not be charged with interpreting and applying Pennsylvania law, including Pennsylvania state and local COVID-19 orders.

In opposing FRIT's motion, HBC was candid about why it filed suit in Maryland and why it did not want the suit to proceed in Pennsylvania: "Maryland," said HBC, "will

require FRIT to mitigate its alleged damages, whereas, in Pennsylvania, [FRIT] can argue that it has no such obligation."[3]

On the merits, HBC disputed FRIT's invocation of forum non conveniens. It argued that FRIT is a real estate investment trust formed under the laws of Maryland; that FRIT has its principal place of business in Montgomery County, Maryland; that FRIT owns or operates numerous properties in Maryland; and that FRIT had filed over 100 lawsuits in Maryland state courts, including 89 in the Circuit Court for Montgomery County. HBC also argued that FRIT had made factual assertions that were not supported by affidavit or other documents. And HBC stressed that it had filed first, in Maryland. Citing *Johnson v. G.D. Searle & Co.*, 314 Md. 521, 530 (1989), one of the few cases concerning section 6-104(a), HBC concluded that there were no "weighty reasons" to disturb its choice of forum.

### E. Judgment of the Circuit Court for Montgomery County, Maryland

On September 29, 2021, the circuit court heard argument on FRIT's motion to dismiss. On November 18, 2021, the circuit court issued an oral ruling, in which it granted the motion.

---

[3] Citing *NCO Financial Systems v. Montgomery Park, LLC*, 918 F.3d 388, 390 (4th Cir. 2019), HBC asserts that under Maryland law a commercial landlord has a duty to make reasonable commercial efforts to mitigate its damages. Citing *Stonehedge Square LP v. Movie Merchants, Inc.*, 685 A.2d 1019, 1023 (Pa. Super. Ct. 1996), HBC asserts that a landlord that is not in breach does not have a duty to mitigate its damages under Pennsylvania law. It is unclear why the difference in law matters, because the amendment to the lease states that the parties' obligations are governed by Pennsylvania law. As the guarantor, HBC stands in the shoes of the tenant.

In its ruling, the circuit court began by observing that HBC filed this case 21 minutes before FRIT filed its case in Pennsylvania. The court recognized that the two cases arose from the "same transactions," involved "identical legal issues," and were "mirror images" of one another. As a result, said the court, there was "parallel litigation" in Pennsylvania and Maryland.

The court quoted section 6-104(a), which permits it to dismiss an action if, "in the interests of substantial justice," the action should be heard in another forum. It recognized that, under one of the few cases interpreting section 6-104(a),[4] it must balance the "public interest factors of systemic integrity" in addition to "private concerns."

The court accurately described the relevant private concerns, which generally involve the convenience of the parties and the witnesses. It also accurately described the "public interest factors," which include the fairness of imposing jury duty on a community with little or no relationship to the controversy, the interest in having local controversies decided locally, and the appropriateness of having a trial in the forum that is familiar with the governing law.

The court found that the dispute arises from a lease, executed in Pennsylvania, for a retail establishment in Pennsylvania. It observed that HBC's complaint requested a permanent injunction that would prevent FRIT from conducting a planned redevelopment of the Pennsylvania property and would require FRIT to continue to operate it as a retail

---

[4] *See Jones v. Prince George's County*, 378 Md. 98, 120-21 (2003).

shopping center. It also observed that, according to HBC, the COVID-19 pandemic frustrated the purpose of the lease.

The court acknowledged that, under the governing case law, a plaintiff's choice of forum should not be disturbed except for "'weighty reasons.'"[5] But, citing a case interpreting Maryland Rule 2-327(c), which permits the transfer of cases from one Maryland court to another on grounds of forum non conveniens, the court asserted that the plaintiff's choice is entitled to less deference when the plaintiff does not reside in the forum.[6]

The court also acknowledged that, in general, "jurisdiction belongs to the court in which the complaint was first filed." The court recognized, however, that public and private concerns "can militate against a mechanical application of the first to file rule." As examples, the court cited cases decided under 28 U.S.C. § 1404(a), the federal statute that permits the transfer of cases "[f]or the convenience of parties and witnesses, in the interest of justice[.]" According to the court, those cases say that the first-to-file rule may yield when there is a race to the courthouse or an anticipatory filing.[7]

The court concluded that Maryland was not an "appropriate" forum for the litigation. It recognized that HBC had filed first, but it rejected a "mechanical

---

[5] *Johnson v. G.D. Searle & Co.*, 314 Md. 521, 529 (1989) (quoting Restatement (Second) of Conflict of Laws § 84 cmt. c (1971)).

[6] *Leung v. Nunes*, 354 Md. 217, 228-29 (1999).

[7] The court cited *Samsung Electronics Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708 (E.D. Va. 2005); and *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357 (W.D.N.C. 2003).

application" of the first-to-file rule, reasoning that doing so would not serve the public or private interests in the case.

The court remarked that neither HBC nor the tenant were residents of Maryland. It conceded that FRIT was a Maryland resident. "But," it said, a forum is not appropriate "merely because a [c]ourt has jurisdiction." Instead, the court said, it must weigh the "equitable considerations" that bear on the issue.

The court reiterated that the dispute involves the extent of liability under a lease, executed in Pennsylvania, for a Pennsylvania property. In the court's view, Pennsylvania law would apply both to the interpretation of the lease and to HBC's defenses to liability. The court added that, in evaluating those defenses, the factfinder would hear evidence about the effect of the COVID-19 pandemic in Pennsylvania, including the governmental restrictions that officials in Pennsylvania imposed during the pandemic. That evidence, the court inferred, "might include" local residents and local authorities in Pennsylvania.

The court went on to say that HBC had requested an injunction to prevent the redevelopment of the Pennsylvania property. Although HBC had asserted that it intended to abandon that request, the court noted that the claim for injunctive relief was still a part of the case.

The court characterized the case as a "local landlord[-]tenant dispute" that would affect the residents of Pennsylvania, "especially if the [c]ourt were to enjoin the development of a regional shopping center." The court conceded that it could interpret Pennsylvania law. But because of the case's origins in Pennsylvania and its potential

impact on Pennsylvania residents, the court thought it more "appropriate" for a

Pennsylvania court to interpret the governing law.[8]

"Finally," the court remarked that there was "parallel litigation" in two states at a

time when courts everywhere were struggling with the disruption caused by the delays

that resulted from the COVID-19 pandemic. The public concern of "efficient and fair

justice," the court said, weighed against "maintaining two actions at once, especially

when there is another forum which has already obtained jurisdiction, albeit 21 minutes

later, [and] which is a more appropriate forum."

The court entered an order on November 18, 2021, staying the case for six months

to ensure that the Pennsylvania action would proceed without issue and that Pennsylvania

would continue to serve as a viable alternative forum. The court dismissed the case on

May 13, 2022, after determining that the litigation had proceeded in Pennsylvania.

---

[8] The circuit court seemed to think that the guaranty, which has no choice-of-law clause, might be governed by Pennsylvania law as well. In fact, until the circuit court had decided which court should hear this case, it was impossible to make a definitive determination about whose law would apply to the guaranty. The forum statute typically applies its own choice-of-law rules to determine which state's substantive law should apply. *See* Eugene F. Scoles & Peter Hay, *Conflict of Laws* 50 (West 1982); Restatement (Second) of Conflict of Laws, *supra*, § 8(1). If Maryland were the forum, the court would typically apply the law of the place where the contract was made (*see*, *e.g.*, *Cunningham v. Feinberg*, 441 Md. 310, 326-29 (2015)), which appears to have been either Maryland or New York. By contrast, if Pennsylvania were the forum, the court would apply "a 'flexible rule which permits analysis of the policies and interests underlying the particular issue before the court' and directs courts to apply the law of the state with the 'most interest in the problem.'" *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 229 (3d Cir. 2010) (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 (3d Cir. 2007)); *accord American Guar. & Liab. Ins. Co. v. Law Offices of Richard C. Weisberg*, 524 F. Supp. 3d 430, 443-44 (E.D. Pa. 2021). It is not immediately apparent whose law a Pennsylvania court would apply to the guaranty.

HBC noted this timely appeal.

## QUESTION PRESENTED

On appeal, HBC presents one question, which we have rephrased in the interest of concision: Did the circuit court abuse its discretion when it dismissed HBC's suit on grounds of forum non conveniens, where there is ongoing active litigation involving the same parties and the same issues in Pennsylvania?[9]

## STANDARD OF REVIEW

"On appellate review of the dismissal of a complaint" under the authority of section 6-104(a) of the Courts and Judicial Proceedings Article, "the test is whether the trial court 'exceeded[ed] its powers or the bounds of its discretion.'" *Johnson v. G.D. Searle & Co.*, 314 Md. at 526 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 512 (1947)). In cases involving the related principles pertaining to the transfer of an action from one Maryland court to another under Rule 2-327(c), Maryland has "resolutely applied an abuse of discretion standard." *University of Md. Med. Sys. v. Kerrigan*, 456 Md. 393, 401 (2017). "Although appellate courts do not rubberstamp the rulings of trial

---

[9] HBC framed its question as follows:

Did the Circuit Court abuse its discretion when it dismissed HBC's lawsuit for forum non conveniens, transferring it to Pennsylvania, when (1) the Circuit Court gave no weight to HBC's choice of forum which is entitled to deference; (2) FRIT is at home in Montgomery County, Maryland; (3) FRIT made no attempt to demonstrate any hardship or inconvenience if the dispute were to be litigated in Maryland; (4) the Guaranty at issue was neither excluded, nor was it to be performed, in Pennsylvania; and (5) a Maryland court is equally well situated to address and resolve the interpretation of the Guaranty as a Pennsylvania Court would be?

11

court judges, appellate courts 'should . . . be reticent' to substitute their own judgment for that of the trial court unless they can identify 'clear abuse' of the wide latitude given to trial courts[.]" *Id.* (quoting *Urquhart v. Simmons*, 339 Md. 1, 17, 19 (1995)).

**DISCUSSION**

### I. Section 6-104(a)

Under the doctrine of forum non conveniens, "'[a] state will not exercise jurisdiction if it is a seriously inconvenient forum for the trial of the action[,] provided that a more appropriate forum is available to the plaintiff.'" *Johnson v. G.D. Searle & Co.*, 314 Md. at 525 (quoting Restatement (Second) of Conflict of Laws § 84 (1971)).

At common law, trial courts of general jurisdiction, such as Maryland's circuit courts, had the inherent power to dismiss cases by applying the principles of forum non conveniens. *See id.* at 527. Section 6-104(a) of the Courts and Judicial Proceedings Article "confirms the existence of an inherent power and makes clear that it may be applied in relation to the broad standard of 'the interest of substantial justice.'" *Id.* at 527-28.

Section 6-104(a) was enacted in 1964 in connection with Maryland's long-arm statute, which is found in the adjacent section of the Code, section 6-103 of the Courts and Judicial Proceedings Article. *Johnson v. G.D. Searle & Co.*, 314 Md. at 528. The long-arm statute and section 6-104(a) are both based on a model act, the Uniform Interstate and International Procedure Act. *Id.* After the United States Supreme Court had expanded the bases for personal jurisdiction in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and the General Assembly had taken advantage of the expanded

12

bases by enacting the long-arm statute, it was considered "desirable to have a safety valve for those cases in which exercise of the enlarged in personam jurisdiction would not be 'in the interest of substantial justice.'" *Johnson v. G.D. Searle & Co.*, 314 Md. at 528.

Since its enactment nearly 60 years ago, Maryland's appellate courts have had only two occasions to review section 6-104(a). We shall review each case in turn.

**A. *Johnson v. G.D. Searle & Co*.**

In *Johnson v. G.D. Searle & Co.*, 314 Md. at 523-24, two women asserted products liability claims against the Illinois-based manufacturer of an intrauterine contraceptive. The women lived in Illinois; one had received a prescription for the device in Michigan, the other in Illinois; and both had undergone medical treatment for their injuries in Illinois. *Id.* They filed suit in Baltimore City because the statute of limitations had run in Illinois. *See id*. at 529; *id.* at 537.

The manufacturer moved to dismiss the complaints under Section 6-104(a), arguing that each action should be heard in an Illinois forum. *Id.* at 524. The circuit court granted the motions. *Id.*

On appeal, Maryland's highest court, then known as the Court of Appeals, began its analysis with this observation:

> If the instant cases involved only the weighing of factors bearing on convenience, without presenting any issue of availability, we assume that it would have been within the discretion of the circuit court unconditionally to dismiss the actions because Illinois was the more convenient forum. But this case is not really about convenience. It is about limitations.

*Id.* at 529.

13

"Thus," the Court said, "the issue" in that case was "whether the circuit court should have conditioned its order" on the manufacturer's agreement not to assert the defense of limitations if the plaintiffs were required to assert their claims in Illinois. *Id.* at 530.

The Court reasoned that "[i]n order to apply a forum non conveniens analysis there must be an alternative forum which is available for the litigation." *Id.* To explain "the concept of an available alternative forum," the Court quoted comment c to section 84 of the Restatement (Second) of Conflict of Laws:

> The two most important factors look to the court's retention of the case. They are (1) that since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed unless a suitable alternative forum is available to the plaintiff. Because of the second factor, the suit will be entertained, no matter how inappropriate the forum may be, if the defendant cannot be subjected to jurisdiction in other states. The same will be true if the plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept the defendant's stipulation that he will not raise this defense in the second state.

The Court went on to discuss a number of decisions from other jurisdictions, in which courts had dismissed cases on grounds of forum non conveniens on the condition that the defendant waive the defense that limitations had already run in the alternative forum when the plaintiff filed suit in the inconvenient forum. *Id.* at 534-37. The Court quoted one of those cases, which had concluded that, "'[i]n a suit between United States citizens, no court has ever applied the doctrine of forum non conveniens to dismiss a case when there was no other forum available to the plaintiff.'" *Id.* at 537 (quoting *Shewbrooks v. A.C. and S., Inc.*, 529 So.2d 557, 562 (Miss. 1988)).

14

The Court recognized that section 6-104(a) "controls forum shopping by plaintiffs by permitting the dismissal of 'an action [which] should be heard in another forum' if dismissal, which may be conditional, is 'in the substantial interest of justice.'" *Id.* at 537. The Court reasoned, however, that it was "not in the interest of substantial justice," and that it was "anomalous, if not disingenuous, to request dismissal of an action on the ground that it should be heard in another forum when the action will likely never be heard in the other forum because it is barred by limitations there." *Id.* "Accordingly," the Court held that "the circuit court abused its discretion by unconditionally dismissing" the complaints. *Id.* at 538. The Court vacated the judgments and remanded the case to the circuit court, with instructions to dismiss the complaints "on the condition that the defendants file with the circuit court waivers of limitations under the law of Illinois." *Id.*

**B. *Jones v. Prince George's County***

The Court revisited Section 6-104(a) 14 years later in *Jones v. Prince George's County*, 378 Md. 98 (2003). In that case, a pair of Prince George's County police officers had followed Prince Carmen Jones, Jr., as he drove from Prince George's County into Virginia. *Id.* at 102-03. When Jones pulled into a driveway in Virginia, one of the officers pulled in behind him in an unmarked car and blocked his exit. *Id.* at 103. The officer got out of his car, exhibited his weapon, but allegedly failed to identify himself as a police officer. *Id.* Jones attempted to flee, was shot five times by the officer, and died a short time later in Virginia. *Id.*

Jones's father and the mother of Jones's child brought a wrongful death action in the Circuit Court for Prince George's County. *Id.* at 103-04. As defendants, they named the police chief, the police department, and Prince George's County. *Id.* at 104.

The complaint alleged, among other things, that the officer who fired the shots had used excessive force; that both officers had been grossly negligent and reckless; that the chief, the department, and the County were liable under the doctrine of respondeat superior; that the police department "'had a policy of tolerating and even encouraging these episodes of excessive force'"; that the police chief "'knew . . . that county police officers were repeatedly injuring civilians'" by using "'excessive force'"; and that the County's failure to properly supervise and train its officers "'led directly'" to Jones's death. *Id.* at 104-05. In addition to common-law claims, the complaint alleged violations of Jones's rights under Articles 24 and 26 of the Maryland Declaration of Rights. *Id.* at 105.

According to the complaint, some of the wrongful conduct occurred in Virginia and, thus, was governed by Virginia law. *Id.* Other conduct, however, occurred in Maryland and, thus, was governed by Maryland law. *Id.*

The defendants moved to dismiss the complaint on the ground of forum non conveniens. *Id.* at 106. They argued that Virginia was a more convenient forum, because the shooting occurred in Virginia and Jones's child and the child's mother lived in Virginia. *Id.* They also argued that Virginia law would govern the case and that "'key evidence'" was located in Virginia. *Id.* The circuit court granted the motion and dismissed the case. *Id.*

16

On certiorari, the Court held that the circuit court erred when it dismissed the case on the ground of forum non conveniens. Citing a decision involving Rule 2-327(c), which permits the transfer of cases from one Maryland jurisdiction to another "if the transfer is for the convenience of the parties and witnesses and serves the interests of justice," the Court began with the premise that "[t]he plaintiffs' choice of forum is not to be lightly disturbed." *Jones v. Prince George's County*, 378 Md. at 120 (citing *Leung v. Nunes*, 354 Md. 217, 224-25 (1999)). The Court added that "[a] court 'must weigh in the balance the convenience of witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of '"the interest of justice."'" *Id.* at 120-21 (quoting *Leung v. Nunes*, 354 Md. at 224).

In considering the factors, the Court asserted that "Maryland obviously had strong interests in the action." *Id.* at 121. "Denying the plaintiffs access to the courts of this State," the Court said, "implicates important public policy considerations." *Id.* "[A]ll of the defendants" were Maryland residents, as were both Jones himself and his mother, who had intervened. *Id.* "Perhaps the only [eye]witness"—the police officer who fired the fatal shots—was "a Maryland resident." *Id.* "The sequence of actions that ended in Virginia began in Maryland." *Id.* "Certain claims [were] entirely controlled by Maryland law." *Id.*

Furthermore, no action had been filed in Virginia, and Virginia's two-year statute of limitations for the action had expired. *Id.* Thus, as in *Johnson v. G.D. Searle,* "no action could be filed in Virginia unless the bar of limitations were waived." *Jones v. Prince George's County*, 378 Md. at 121.

17

The Court reiterated the holding in *Johnson v. G.D. Searle*, that "'a circuit court

abuses its discretion by unconditionally dismissing actions on the ground of forum non

conveniens when the statute of limitations has likely run in the alternative forum.'" *Id.*

(citing *Johnson v. G.D. Searle & Co.*, 314 Md. at 523). It concluded: "This was clearly

not an appropriate case for applying the doctrine of *forum non conveniens*." *Id.*[10]

## C. Implications of *Johnson v. G.D. Searle* and *Jones v. Prince George's County*

The facts in *Johnson v. G.D. Searle* and *Jones v. Prince George's County* bear

little resemblance to the instant case, so the cases offer little guidance. Strictly speaking,

both appear to hold only that a court may not unconditionally dismiss an action on

grounds of forum non conveniens unless an alternative forum is available. Beyond that,

both suggest that the plaintiff's choice of a forum is entitled to deference—it "'should not

be disturbed except for weighty reasons'" (*Johnson v. G.D. Searle & Co.*, 314 Md. at 530

(quoting Restatement (Second) of Conflict of Laws, *supra*, § 84 cmt. c)) or "is not to be

---

[10] Forum non conveniens was an alternative ground for dismissing the complaint. The circuit court had also dismissed the case on the ground that Jones's mother, as the personal representative of his estate, was the only person authorized to bring a wrongful death under Virginia law. *Id.* On certiorari, the Court reversed that decision as well. Among other things, the Court held that, under Maryland's wrongful death statute, a Maryland court applies its own rules of pleading and procedure even if the wrongful act occurred in another state (*id.* at 107-08; *id.* at 110-13; *see* § 3-903(b) of the Courts and Judicial Proceedings Article); that the question of who has standing to bring a wrongful death action is a matter of pleading and procedure (*see Johnson v. G.D. Searle & Co.*, 314 Md. at 115); and that since 1997 the statutory beneficiaries under the wrongful death statute have had standing to bring a wrongful death action under the Maryland rules. *Id.* at 115-18. Because Jones's father and the mother of Jones's child were beneficiaries under the Maryland statute, the Court held that the circuit court erred in ruling that they lacked standing. *See id.* at 118. The Court also held that the substantive law of Virginia applied to some, but not all, of the claims. *Id.* at 109-10.

lightly disturbed." *Jones v. Prince George's County*, 378 Md. at 120 (citing *Leung v. Nunes*, 354 Md. at 224-25).

*Jones* suggests that a circuit court must "'balance'" the "'private concerns,'" such as the convenience of parties and the witnesses, against the "'public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of the interest of justice.'" *Id.* at 120-21 (quoting *Leung v. Nunes*, 354 Md. at 224) (further quotation marks omitted). *Jones* also suggests that the circuit court's decision depends on the strength of Maryland's interests in the action, which includes whether the defendant is a Maryland resident, where most of the witnesses are located, whether the claims arose in whole or in part in Maryland, and whether Maryland law governs some of the claims in the case. *Id.* at 121.

Finally, because *Jones* cites a decision involving Rule 2-327(c), which permits the transfer of cases from one Maryland jurisdiction to another "if the transfer is for the convenience of the parties and witnesses and serves the interests of justice," *Jones* implies that those decisions may inform the analysis of whether a court should dismiss an action "in the interest of substantial justice" under section 6-104(a).

## II. The Court Did Not Abuse Its Discretion

In arguing that the circuit court abused its discretion, HBC deploys an array of arguments. It asserts that FRIT failed to adduce any admissible evidence to establish that Maryland was an inconvenient forum. It says that its choice of forum should prevail because it was the first to file. It contends that the court gave insufficient weight to Maryland's interest in adjudicating a case involving a Maryland resident, for which

Maryland was certainly not an inconvenient forum. Finally, it claims that the court gave undue weight to its request for an injunction prohibiting FRIT from redeveloping the property, in Pennsylvania.

For the reasons enumerated below, we reject each of those arguments.

**A. The Alleged Absence of Admissible Evidence**

HBC begins by asserting, correctly, that under section 6-104(a) the burden for dismissal is high. *Jones v. Prince George's County*, 378 Md. at 120; *Johnson v. G.D. Searle & Co.*, 314 Md. at 530. HBC argues that FRIT did not meet that burden, because FRIT presented no evidence to support its contention that Maryland was an inconvenient forum.

In support of its contention, HBC cites Maryland Rule 2-311(d), which provides that "[a] motion or a response to a motion that is based on facts not contained in the record shall be supported by affidavit and accompanied by any papers on which it is based." HBC argues that FRIT failed to support its motion with an affidavit. Hence, HBC concludes that FRIT had no right to contend, for example, that most of the witnesses in this case would reside in Pennsylvania.

HBC fails to recognize that FRIT's motion relied on the factual allegations in HBC's complaint and on the documents attached to the complaint, such as the lease amendment and the guaranty. On the basis of those documents alone, it is abundantly clear that this case involves a lease of a commercial property in Pennsylvania, that the lease is governed by Pennsylvania law, that HBC's defenses depended on the specific restrictions imposed by state and local officials in Pennsylvania during the COVID-19

20

pandemic, and that HBC had asked the court to enjoin the redevelopment of the commercial property in Pennsylvania. FRIT did not need to supply an affidavit reciting facts that were apparent from HBC's pleading itself.

Moreover, the circuit court expressly stated that it had not relied on anything outside of the record. Instead, the court based its ruling on the materials before it— HBC's complaint and the exhibits thereto. With those documents at hand, the court did not need an affidavit to infer, for example, that, in a case concerning the effect of the state and local restrictions imposed on a retail business in Pennsylvania during the COVID-19 pandemic, many (if not most) of the witnesses would probably come from Pennsylvania.

**B. HBC's Choice of Forum**

HBC goes on to argue that the circuit court "misapplied the facts and law" in concluding that Maryland was an inconvenient forum. Among other things, HBC argues that it filed first and chose the forum and that its choice of a forum is entitled to deference. It points out that FRIT is a resident of Montgomery County, Maryland, and thus that the circuit court could not have been an inconvenient forum for FRIT. It contends that the circuit court "devalued" Maryland's alleged interest in adjudicating a dispute involving one of its citizens.

### 1. "First to File"

In a controversy concerning whether a court is an inconvenient forum, the plaintiff's choice of a forum is entitled to deference. *Jones v. Prince George's County*, 378 Md. at 120; *Johnson v. G.D. Searle & Co.*, 314 Md. at 530. In cases decided under Rule 2-327(c), however, this Court has cautioned that "the plaintiff's choice of forum

21

need not be articulated and evaluated all over again as a 'factor' in the weighing process," because "it has already been factored into the burden or persuasion itself[.]" *Smith v. Johns Hopkins Cmty. Physicians, Inc.*, 209 Md. App. 406, 415 (2013) (emphasis omitted) (citing *Payton-Henderson v. Evans*, 180 Md. App. 267, 287 (2008)); *see also Urquhart v. Simmons*, 339 Md. at 18 n.7 (stating that a proper regard for the plaintiff's choice of forum "is not a separate element in the analysis," but rather a reason why the motion "'should be granted only when the balance weighs strongly in favor of the moving party[]'") (quoting *Odenton Dev. Co. v. Lamy*, 320 Md. 33, 40 (1990)). "'Once the trial judge enters into the balancing process, the discretion entrusted is extremely wide and the appellate deference owed is concomitantly wide.'" *Smith v. Johns Hopkins Cmty. Physicians, Inc.*, 209 Md. App. at 416 (emphasis omitted) (quoting *Payton-Henderson v. Evans*, 180 Md. App. at 287).

Because of the scarcity of authority under section 6-104(a), both parties debate the importance of HBC's choice of a Maryland forum by discussing cases that interpret and apply Rule 2-327(c). But although the policies underlying the rule are analogous to those that underlie the statute, the facts of this case differ in one material respect from the facts in the cases that interpret and apply the rule. In those cases, the plaintiff has filed suit in one circuit court in Maryland, and the defendant has moved to transfer the case to another circuit court in Maryland "for the convenience of the parties and the witnesses" and in "the interests of justice." Here, by contrast, the court was not called upon to decide whether "the convenience of the parties and the witnesses" and "the interests of justice" meant that that single, discrete case should be heard elsewhere. Instead, the court was

22

called upon to decide whether it should hear a case when another case, involving the same parties, the same subject matter, and the same legal issues, was pending in another jurisdiction.[11]

In cases under 28 U.S.C. § 1404(a), which permits federal courts to transfer an action to another federal district "[f]or the convenience of parties and witnesses, in the interest of justice," courts have confronted the problem of how to proceed when a similar or identical lawsuit is pending in another federal district.[12] Those cases state that, "[w]here 'identical actions are pending concurrently in two federal courts, the first-filed action is generally preferred.'" *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 724 (E.D. Va. 2005) (quoting *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 15 (D. Mass. 2002)); *accord Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603, 606 (5th Cir. 2022) (stating that, "in

---

[11] Citing cases decided under Maryland Rule 2-327(c), FRIT argues that the importance of the plaintiff's choice "shrinks" when "the plaintiff does not reside in the forum where the plaintiff has chosen to file suit." *Univ. of Maryland Med. Sys. Corp. v. Kerrigan*, 456 Md. at 406; *accord Smith v. Johns Hopkins Cmty. Physicians, Inc.*, 209 Md. App. at 413 (stating that "where the plaintiff does not live in the forum he initially chooses, the plaintiff's choice is entitled to little deference and thus little weight"). The circuit court seemed to agree. We question whether that principle should apply in a case under section 6-104(a), in which an out-of-state plaintiff has filed suit in Maryland. If applied in such a case, the rule might seem to disadvantage out-of-state plaintiffs by automatically devaluing their choice of a Maryland forum.

[12] Because Maryland Rule 2-327(c) "was derived from 28 U.S.C. § 1404(a)," "the federal law construing § 1404(a) is highly persuasive" in the interpretation and application of Rule 2-327(c). *Odenton Dev. Co. v. Lamy*, 320 Md. at 40; *accord Urquhart v. Simmons*, 339 Md. at 10. Rule 2-327(c), in turn, sheds some light on the proper interpretation and application of section 6-104(a). *Jones v. Prince George's County*, 378 Md. at 120-21.

23

the absence of compelling circumstances, the district court [judge] who gets the suit first should be the one to decide the case") (internal quotations omitted); *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008) (stating that as a "general rule, '[w]here there are two competing lawsuits, the first suit should have priority'") (quoting *First City Nat'l Bank & Trust Co v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)); *Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 Fed. App'x 297, 302 (4th Cir. 2001) (stating that the first suit should have priority, except "when the balance of convenience favors the second action"); *Samsung Elecs. America, Inc. v. Grecia*, 525 F. Supp. 3d 590, 598 (E.D. Pa. 2021) (stating that "'[w]here there are parallel proceedings, in different federal courts, the first court in which jurisdiction attaches has priority to consider the case'") (quoting *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 737 (E.D. Pa. 2005)); *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003) (stating that, where the same parties have filed similar litigation in separate forums, doctrines of comity "dictate that the matter should proceed in the court where the action was first filed, and that the later-filed action should be stayed, transferred, or enjoined"); *First Nationwide Mortg. Corp. v. FISI Madison, LLC*, 219 F. Supp. 2d 669, 672 (D. Md. 2002) (stating that, "[i]n general, when parties to a dispute file mirror-image suits in two federal district courts, priority is given to the suit that is filed first").

Here, HBC filed first—21 minutes before FRIT. But that trivial difference could have resulted from any number of fortuities, such as whether the traffic was worse in suburban Philadelphia than in suburban Washington, D.C., whether more people were

24

waiting in line to file in Pennsylvania than in Maryland, or whether the clerk's office in Maryland was better staffed or more efficient than the clerk's office in Pennsylvania. We doubt that the first-to-file rule should govern when the two, parallel filings were, for all practical purposes, nearly simultaneous, as they were in this case.

In any event, because "[t]he policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources," exceptions "are common 'when justice or expediency requires.'" *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d at 724 (quoting *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)); *LifeNet, Inc. v. United States Dep't of Health & Human Servs.*, 617 F. Supp. 3d 547, 555-56 (E.D. Tex. 2022) (stating that the purpose of the first-to-file rule is to "'avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result[]'") (quoting *W. Gulf. Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985)); *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 474 (D. Md. 2008) (stating that a "significant factor in considering the interests of justice is 'avoiding duplicative litigation in courts'") (quoting *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000)); *Encore Furniture Thrifts & More, LLC v. Doubletap, Inc.*, 281 F. Supp. 3d 665, 668 (M.D. Tenn. 2017) (stating that "exceptions to the first to file rule are not rare and are made when justice or expediency requires").

The "exceptions to the first-to-file rule include bad faith, anticipatory suits, and forum shopping.'" *Samsung Elecs. Co., Ltd. v. Rambus, Inc*., 386 F. Supp. 2d at 724

25

(citing *Plating Resources, Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 905 (N.D. Ohio 1999));

*accord Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 901 (D. Md. 2008)

(citing exceptions in cases of "'bad faith, anticipatory suit[s], and forum shopping[]'")

(quoting *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 622 (9th Cir. 1991));

*Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d at 360 (stating that, "even if a

court finds the first-filed rule applicable, it may still make the discretionary determination

that the rule should be ignored as a result of 'special circumstances,' such as forum

shopping, anticipatory filing, or bad faith filing").

"When the circumstances suggest a race to the courthouse, the first-to-file rule

loses much of its force." *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d at

724; *accord Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973,

980 (7th Cir. 2010) (stating that courts have "departed from a first-to-file rule where one

party files its lawsuit in anticipation of an impending suit by the opposing party");

*Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Argic. Implement Workers

of America*, 502 Fed. App'x 201, 205 (3d Cir. 2012); *Great West Cas. Co. v. Packaging

Corp. of America*, 444 F. Supp. 3d 664, 671 (M.D.N.C. 2020) (stating that the "courts

should decline jurisdiction over a first-filed declaratory judgment action where a party

races to the courthouse seeking to head off 'the trial of an issue in a court of coordinate

jurisdiction'") (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir.

1937)); *Herbert Ltd. P'ship v. Electronic Arts, Inc.*, 325 F. Supp. 2d 282, 292 (S.D.N.Y.

2004)) (stating that "[c]ourts do not mechanically apply the first-filed rule 'where the first

suit constitutes an "improper anticipatory filing" or was motivated solely by forum

26

shopping'") (quoting *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001)); *see also* 15 Charles Alan Wright et al., *Federal Practice & Procedure* § 3854, at 343 & n.13 (4th ed. 2023) ("courts have found exceptions to the first-filed rule based on forum shopping, anticipatory conduct, or when other special circumstances justify giving priority to the second action").

"'An anticipatory filing is improper when it attempts to exploit the first-filed rule by securing a venue that differs from the one that the filer's adversary would be expected to choose.'" *Samsung Elecs., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d at 724 (quoting *Herbert Ltd. P'ship v. Electronic Arts, Inc.*, 325 F. Supp. 2d at 292) (further quotation omitted). "An improper anticipatory filing is one 'made under the apparent threat of a presumed adversary filing the mirror image of that suit in a different [court].'" *Herbert Ltd. P'ship v. Electronic Arts, Inc.*, 325 F. Supp. 2d at 292 (quoting *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995)).

The United States District Court for the District of Maryland gave an example of an anticipatory filing in *First Nationwide Mortgage Corp. v. FISI Madison, LLC*, 219 F. Supp. 2d at 672. In that case, the parties' dispute had been simmering for months, but the plaintiff, First Nationwide, did not file suit until shortly after counsel for its adversary sent a letter stating "threatening 'swift legal action.'" *Id.* at 673. First Nationwide "could have foreseen that the impending legal action would be filed in Tennessee[,]" because its adversary's principal place of business was in Tennessee and its counsel was located there. *Id.* "Rather than waiting to become a defendant in Tennessee, First Nationwide jumped on the chance to be a plaintiff in Maryland." *Id.*

27

Much like the complaint in *First Nationwide*, HBC's complaint is an example of an anticipatory filing. HBC had actual knowledge of FRIT's intention to file suit to enforce the guaranty: in the letter that HBC received by Federal Express three weeks to the day before the parties filed their respective complaints, FRIT's attorney informed HBC that FRIT "reserved the right to pursue all rights and remedies under the Lease, at law and/or in equity," if HBC did not "immediately pay" the amounts allegedly due under the guaranty. HBC would have suspected that FRIT intended to "pursue" its "rights and remedies" in Pennsylvania, because FRIT was represented by a firm in nearby New Jersey, and because HBC had consented to personal jurisdiction in Pennsylvania in the guaranty. In response to the warning of imminent litigation from FRIT's attorney, HBC filed a preemptive declaratory judgment action in Maryland, a forum that (it says) might look more skeptically at FRIT's damages claim than a Pennsylvania court would. HBC's preemptive lawsuit is identical to the counterclaim that it would have filed in a Pennsylvania lawsuit brought by FRIT. In fact, HBC has described the two lawsuits as "two sides of the same coin." In these circumstances, it was entirely appropriate for the circuit court to discount the importance of HBC's choice of a Maryland forum and to refrain, as the court did, from a rigid and inflexible application of the first-to-file rule.

### 2. Forum Considerations

HBC argues that the circuit court "erred" or "abused its discretion" because, HBC says, it undervalued the extent of Maryland's interest in resolving this controversy. In particular, HBC contests the circuit court's characterization of the case, at its core, as a landlord-tenant dispute involving a lease for a property in Pennsylvania. HBC argues

28

that the dispute concerns a separate contractual document—a guaranty, albeit a guaranty of a lease that is governed by Pennsylvania law, that concerns a property in Pennsylvania, and that was given as consideration for an extension of the lease. HBC concedes that "there is, of course, some secondary relation to the Lease and real property located in Pennsylvania," but it insists that the case is really about "a Maryland entity's demand for money." "Maryland," HBC argues, "has a substantial interest in resolving" a dispute involving "the rights of a Maryland entity" that has "its principal place of business here."

Similarly, HBC asserts that Montgomery County, Maryland, "is not an 'inconvenient' forum" for this litigation and that "FRIT could not credibly contend" that it was inconvenient. HBC stresses that FRIT is chartered in Maryland, that it has its principal place of business in Montgomery County, Maryland, and that it has instituted litigation in Montgomery County, Maryland, on no fewer than 89 occasions.

HBC also asserts that the circuit court put too much weight on the probability that many of the witnesses and much of the evidence would be based in Pennsylvania.[13] "Any" resulting inconvenience, HBC says, would be "minimal given the reality of modern transportation and communication." According to HBC, "[w]itnesses can be interviewed by telephone, documents can be scanned and produced electronically, and lawyers can easily travel" what HBC refers to as "the short distance" between suburban

---

[13] HBC also asserts that the court's conclusion is not supported by evidence in the record. We have already rejected that contention.

29

Washington, D.C., and suburban Philadelphia[14] "to conduct any discovery that would need to be conducted in Pennsylvania[.]"

HBC's argument misapprehends the nature of the discretionary decision that the circuit court was called upon to make. The court was required to weigh a number of factors to make a determination about what "the interests of substantial justice" required. Those factors included private considerations, such as the convenience to the witnesses, who, for the most part, are likely to have to travel from Pennsylvania—a fact that HBC does not mention. The relevant factors also included public considerations, such as whether the burden of this litigation should be borne by the citizens of Montgomery County, Maryland, or by the citizens of Montgomery County, Pennsylvania, where the property is located, and whether a Maryland court should decide the questions of Pennsylvania law that will arise in a case involving the guaranty of a lease that is governed by Pennsylvania law. The weighing process was more complicated in this case than in others because of the parallel litigation pending in Pennsylvania and the need to avoid duplicative litigation and the possibility of conflicting rulings and judgments.

The pertinent factors do not all point in the same direction. Maryland is certainly not an inconvenient forum for FRIT, though this alone is hardly a dispositive

---

[14] HBC asserts that the Pennsylvania witnesses are "merely two hours away" from the Maryland courthouse where HBC filed this suit. According to Google Maps, it would take two hours and 54 minutes to drive the 144.4 miles from Norristown, Pennsylvania, where the Court of Common Pleas in Montgomery County, Pennsylvania, is located, to Rockville, Maryland, where the Circuit Court for Montgomery County, Maryland, is located.

consideration.[15]  Nor is Maryland an inconvenient forum for HBC, which was content to file suit here.  Pennsylvania borders Maryland, and suburban Philadelphia is not as remote from suburban Washington, D.C., as (for example) suburban Los Angeles, is.

Nonetheless, the circuit court was under no obligation to assign the same weight to those factors as HBC does.  "'So long as the Circuit Court applies the proper legal standards and reaches a reasonable conclusion based on the facts before it, an appellate court should not reverse a decision vested in the trial court's discretion.'"  *University of Md. Med. Sys. v. Kerrigan*, 456 Md. at 401 (quoting *Aventis Pasteur, Inc. v. Skevofilax*, 396 Md. 405, 436 (2007)).  Here, the circuit court applied the proper legal standards and reached a reasonable conclusion based on the facts before it.  Therefore, we have no basis to set aside the court's exercise of its discretion.

Finally, the question before the circuit court was not so much whether Maryland was an inconvenient forum for the parties, but whether a Maryland court should entertain this case when an identical case, involving the same parties, had been filed almost simultaneously in Pennsylvania.  In these circumstances, the court was rightly concerned about the public and private costs of duplicative litigation.  The court may also have been concerned about the possibility of conflicting rulings and conflicting judgments if the

---

[15] *See Fox v. Callender*, 729 F. Supp. 32, 34 (D. Md. 1990) (transferring a case from the District of Maryland to the Eastern District of Virginia under 28 U.S.C. § 1404(a) because "the only connection that this case has with Maryland is the residence of the Defendants, who, by their own motion, show a preference in having this action tried in Virginia"); *accord Mamani v. Bustamante*, 547 F. Supp. 2d at 474 (transferring a case from the District of Maryland to the Southern District of Florida under 28 U.S.C. § 1404(a) again because the only connection with Maryland was the residence of the defendants, who had moved to have the action tried elsewhere).

cases proceeded on separate tracks in two different states. Thus, the court recognized that the dispute should go forward in only one jurisdiction and that it was required to decide which of those jurisdictions was the most appropriate forum.

The court's ruling reflects a reasonable determination that because the property is located in Pennsylvania, because the lease is governed by Pennsylvania law, and because many of the witnesses are likely to be residents of Pennsylvania, Pennsylvania was the most appropriate jurisdiction for this dispute.[16]

### 3. Claim for Injunctive Relief

Finally, HBC complains that, in dismissing the Maryland action in favor of the Pennsylvania action, the circuit court considered its claim for an injunction barring FRIT from redeveloping the Pennsylvania property. HBC observes that, in FRIT's answer to HBC's Maryland complaint, FRIT asserted that the request for an injunction was "moot," apparently because the tenant had rejected the lease in bankruptcy and had relinquished control of the premises. HBC concludes that the circuit court abused its discretion in counting the claim for injunctive relief as a factor weighing in favor of dismissal.

We see no abuse of discretion. Although HBC expressed an intention to withdraw its claim for injunctive relief, the claim was still pending when the circuit court ruled. Moreover, it is unclear whether HBC agreed with FRIT's assertion that the claim was moot.

---

[16] Because the case has now been proceeding in Pennsylvania for over a year, we would create a serious problem that the circuit court avoided—the possibility of conflicting rulings and conflicting judgments—if we reversed the circuit court's exercise of discretion.

But even if the court abused its discretion in considering the allegedly "moot" claim for injunctive relief, a reversal is unwarranted, because the error, if any, was harmless. *Crane v. Dunn*, 382 Md. 83, 91 (2004) (stating that "[i]t is the policy of this Court not to reverse for harmless error and the burden is on the appellant in all cases to show prejudice as well as error[]"). Even without HBC's claim for an injunction restricting the use of property in Pennsylvania, the circuit court had more than an adequate basis to conclude that this dispute should proceed in Pennsylvania, and not in Maryland.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**